### UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF LOUISIANA

### NEW ORLEANS

\* \* \* \* \* \* \* \* \* \* \* \*

IN THE MATTER OF:        \*    NO. 07-11862

RON WILSON AND LARHONDA WILSON,  \*    SECTION "A"

        DEBTORS.       \*    CHAPTER 13

\* \* \* \* \* \* \* \* \* \* \* \*

Transcript of the proceedings taken in the above captioned matter on **Friday, November 21, 2008,** the Honorable Elizabeth W. Magner, United States Bankruptcy Judge, presiding.

AUDIO OPERATOR:    Kathy Whyte

TRANSCRIPTIONIST:  Dorothy Bourgeois
                84425 Terrell Road
                Bogalusa, Louisiana 70427
                (985) 886-1015

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

**APPEARANCES:**

Office of the U.S. Trustee
By:  Sean Haynes, Esquire
By:  Mary S. Langston, Esquire
By:  Amanda Burnette, Esquire
400 Poydras Street, Suite 2110
New Orleans, Louisiana 70130

    Representing the United States Trustee's Office


Watkins Ludlam Winter & Stennis, PA
By:  Susan Fahey Desmond, Esquire
2510 14th Avenue, Suite 1125
Gulfport, Mississippi 39501

Reed Smith, LLP
By:  Kurt F. Gwynne, Esquire
1201 Market Street, Suite 1500
Wilmington, Delaware 19801

    Representing Option One Mortgage Corporation


Winstead PC
By:  Michael P. Cash, Esquire
By:  Joseph G. Epstein, Esquire
1100 JP Morgan Chase Tower
600 Travis Street
Houston, Texas 77002

    Representing Fidelity National Foreclosure Solutions


The Boles Law Firm
By:  Jacob S. Edwards, Esquire
1818 Avenue of America
Monroe, Louisiana 71201

    Representing the Boles Law Firm

1                    P R O C E E D I N G S

2                   (Friday, November 21, 2008)

3           THE CLERK:  Proceeding this 21st day of November

4    2008, Case Number 07-11862, Ron and LaRhonda Wilson.

5           THE COURT:  Appearances, please.

6           MR. HAYNES:  Sean Haynes for the United States

7    Trustee for Region 5, and my colleagues Mary Langston and

8    Amanda Burnette are here.

9           MR. GWYNNE:  Kurt Gwynne from Reed Smith on behalf of

10   Option One.

11          MS. DESMOND:  And local counsel, Susan Desmond, also

12   on behalf of Option One.

13          MR. CASH:  Your Honor, Michael Cash and Joe Epstein

14   with Winstead on behalf of Fidelity.  And, Your Honor,

15   Mr. Epstein has filed and I think it may have only been filed

16   this morning, a Motion for Pro Hac Vice --

17          THE COURT:  I think I signed that last night.

18          MR. CASH:  -- and I wanted to let the Court know that

19   I was under the impression that he had done it earlier and I

20   apologize for the tardiness.

21          THE COURT:  That's fine.  That's fine.

22          MR. EDWARDS:  Jacob Edwards for the Boles Law Firm.

23          THE COURT:  Thank you.

24          Okay, who wants to start?  You're standing, so I

25   suppose it's going to be you.

1          MR. GWYNNE:  Good morning, Your Honor.  First of all

2     I want to thank the Court for the privilege of appearing pro

3     hac vice in the court today.

4          Your Honor, what I'd like to do today are first of

5     all address the issues that Your Honor thought more testimony

6     or discovery was necessary on and I believe the careful review

7     of the transcripts -- I know when Your Honor made those

8     statements at the end of the hearing, it was a long hearing.

9     It's a 279 or page transcript.  But I think if you look at the

10    testimony, Your Honor, there are not inconsistencies and I will

11    explain that specifically.

12         In addition I would like to address the issue of who

13    is a party to what's going on and what rights if any the U.S.

14    Trustee has to take discovery via interrogatories and request

15    to produce documents.

16         And then lastly, Your Honor, I would like to address

17    respectfully the fairness of this proceeding both in terms of

18    how it's proceeded in the Court and also how it proceeded with

19    Mr. Wirtz, who unfortunately is not here today, but purporting

20    to represent Option One and himself at hearings.  When I read

21    the transcripts and was disappointed that really what he was

22    doing was representing himself I believe at the expense of

23    Option One.  And I don't mean to impugn the Boles Law Firm; I'm

24    sure it's a great firm, and Mr. Wirtz may be a great attorney,

25    and I know that he was personally invested in protecting

1    himself as well as anybody would be, but I think in that

2    context it was not appropriate for him to be representing

3    Option One, and I'll explain that further with respect to some

4    citations to the record as well.

5            With respect to the issues that Your Honor believed

6    there may have been a conflict in the testimony and need for

7    more discovery, what I have down for the issues are a conflict

8    or perceived conflict regarding the responsibility to review

9    the loan history regarding whether a default existed.

10   Secondly, whether there was a conflict regarding whether a loan

11   was ready to be sent for a Motion for Relief from Stay.  Third,

12   whether the time monitoring of counsel had any affect on the

13   ability to review the file.  Fourth, why use Fidelity as the

14   information or communication medium.  Fifth, who set up the

15   Bankruptcy Work Station, as I believe it's referred to in the

16   transcripts.  Sixth, the legal relationship between the

17   parties.  Seventh, the fees that are charged.  And eighth, who

18   held the checks.

19           Turning to the first of those issues, Your Honor,

20   whether there was a conflict regarding the responsibility to

21   review the loan history regarding the existence of a default.

22   Dory Goebel testified on Page 104 at Lines 21 to 24 that she

23   validated the information in the affidavits.  On Page 69 at

24   Lines 7 through 9 she testified that she executes the

25   affidavits after she's verified the amounts due.  On Page 59,

1  Lines 11 through 23 she testified that she reviews all of

2  Option One's available records that are in the New Track System

3  which includes some records that are pulled from Option One's

4  other networks or systems directly.  On Page 26, Lines 21 to 22

5  and Page 27, Lines 13 to 14 -- and, generally, Your Honor, I

6  think unless I say otherwise I'm talking about the August 21st

7  hearing as opposed to the June 26th hearing.  But with respect

8  to those last two citations, she testified that the info for

9  the affidavit comes from a website -- it comes from the website

10 in the New Track System which is information from Option One's

11 system that is either input or automatically pulled into that

12 system.

13        The Court also expressly acknowledged on Page 138,

14 Lines 9 through 11 that Ms. Goebel verifies the information in

15 the affidavit.  So, that was the testimony I believe with the

16 specific citations of Ms. Goebel who was testifying on behalf

17 of Fidelity, now known as LPS.

18        With respect to Arthur Simmons, who was the witness

19 on behalf of Option One, on Page 148, Lines 7 through 15 of the

20 transcript he said that he did not verify amounts in the

21 affidavits.  On Page 138, Lines 9 through 11 he testified that

22 -- or he admitted that the payments that were sent to Mr. Wirtz

23 were not reflected in the information that was available to

24 Fidelity.  I understand that may be part of the problem,

25 because, unfortunately, even though Mr. Wirtz was holding

1  checks at least in the amount of $1,800 which he admitted at

2  the earlier hearing I'll address later, he didn't put them in

3  the affidavit that he drafts.  And I do think, Your Honor, and

4  I'll address this in more detail later, but --

5          THE COURT:  Nor did Option One put them in the

6  system.

7          MR. GWYNNE:  That's correct.  And I believe -- I

8  understand there were a number of things that happened that led

9  to the affidavit not being correct, but --

10         THE COURT:  And the other problem I have is that

11  Ms. Goebel testified that she just looked on screens and took

12  numbers off of screens and didn't go behind to make sure that

13  payments had been properly applied or that in the case of the

14  bankruptcy which often happens, frankly, in this Court, that

15  payments were applied properly to pre or post-petition

16  obligations.  And she testified that it was the responsibility

17  of Option One --

18         MR. GWYNNE:  That's correct.

19         THE COURT:  -- to make sure that its accounting

20  system was correct, that Fidelity just uploaded the main frame

21  off of Option One.  Option One said, no, that's not our

22  responsibility; that's Fidelity and Ms. Goebel's

23  responsibility.

24         MR. GWYNNE:  What is?  What are you saying Option One

25  testified to latter part?

1    THE COURT:  That they don't when a bankruptcy is

2  filed they don't verify, they don't go into the system and

3  check or verify, they just assign -- I guess they let Fidelity

4  know there's a bankruptcy -- or actually I think Fidelity let's

5  them know that there's a bankruptcy.

6    My problem is that as I heard the testimony of these

7  two individuals, each one was saying, "We don't go back and

8  look at anything."  And each one was saying that it was

9  somebody else's responsibility to go back and look at the

10  accounting information and make sure that it was accurate, that

11  they did not take on that responsibility.

12    MR. GWYNNE:  I don't believe that's a fair

13  characterization, Your Honor.  What the testimony you're

14  referring --

15    THE COURT:  Well, then give me if I disagree with

16  you --

17    MR. GWYNNE:  I will.

18    THE COURT:  I mean I do.

19    MR. GWYNNE:  Well, I understand that.

20    THE COURT:  Let's be frank.  I disagree.  I listened

21  to the testimony.  There are several people involved in the

22  handling of these cases, several layers of counsel and

23  administrators, and I listening to the testimony could not

24  determine ultimately whose responsibility it was when a case

25  was filed to (a) make sure that the accounting was accurate at

1    the start of the case, (b) make sure that payments were

2    applied properly, (3) make sure that payments were put into the

3    system when received, (d) communicate up and down the line to

4    advise anyone who has responsibility to make decisions on the

5    file as to relevant information that might affect those

6    decisions --

7         MR. GWYNNE:  All of that information is in the

8    evidence and I think Your Honor is mixing --

9         THE COURT:  I disagree.

10        MR. GWYNNE:  Well, if I -- I understand, Your Honor,

11   but if I could address specifically what I think the parties'

12   responsibilities were --

13        THE COURT:  You testimony is not sufficient.

14        MR. GWYNNE:  I'm not testifying, Your Honor.  I'm

15   referring --

16        THE COURT:  I think their testimony was conflicting.

17        MR. GWYNNE:  Well, Your Honor, Ms. Goebel testified

18   she verified information in the affidavit by going to the

19   screens like you said.

20        THE COURT:  Just looking at the screens, that's all.

21        MR. GWYNNE:  Looking at the screens.

22        THE COURT:  And it was Option One's responsibility --

23        MR. GWYNNE:  Correct.

24        THE COURT:  -- to put that information in correctly.

25        MR. GWYNNE:  Correct.  And you're saying that --

1                THE COURT:  And Option One said they didn't have

2      that responsibility that they just uploaded the system and

3      Fidelity had full responsibility to determine if there was a

4      default.

5                MR. GWYNNE:  Well, Your Honor, I --

6                THE COURT:  And they also testified that there is a

7      conflict between whether or not Fidelity could correct a

8      problem if it went into the system and saw that there was an

9      issue or whether only Option One could correct that problem.

10               MR. GWYNNE:  Your Honor, the witnesses -- no witness

11     from Option One said it was not their responsibility to put

12     information in the system.  That was not the testimony.  It was

13     the --

14               THE COURT:  No, they said that they didn't put

15     information into the system.

16               MR. GWYNNE:  Right, and I -- but, Your Honor, the

17     point I'm making is I'm not saying that everything was perfect.

18     I want that to be clear.

19               THE COURT:  Far from it.

20               MR. GWYNNE:  Well, I'm not saying that things were

21     perfect.  The point that I'm making is Your Honor said the

22     testimony was conflicting.

23               THE COURT:  I think some of the testimony is

24     conflicting.  You want to take pieces of the testimony and say

25     there isn't a conflict.  There were conflicts in the testimony.

1    There were conflicts over who had a responsibility for

2    different tasks, who had a responsibility to verify, the scope

3    of that verification, and the scope of the authority to change

4    the system in the event that errors were found.

5              MR. GWYNNE:  Your Honor, I think when you're saying

6    there's a conflict you're -- the parties had different

7    responsibilities in the system, but no witness testified that

8    it was each others.  There was no crossing.  For example the

9    Fidelity witness said that it's Option One's responsibility to

10   put information in the system.  And Option One's witness

11   testified consistent with that.  And he said the information

12   was not in the system with respect --

13             THE COURT:  This is with respect to the checks.

14             MR. GWYNNE:  Right.  But the witness from Option One

15   testified that when a Motion for Relief is going to be filed

16   that it is Fidelity's job to verify the statements in the

17   affidavit.  Both parties are involved in the process,

18   absolutely.  Option One puts information in, Fidelity relies

19   upon it.  The witness, Mr. Simmons, testified that he did not

20   have the -- put that information in the system and, therefore,

21   it was not available to Fidelity on those payment screens.

22   That's not a conflict in the testimony.  That's a situation --

23             THE COURT:  No, but there are other -- no, that's not

24   a conflict in the testimony.  He was clear he didn't put it in

25   the system.  He turned it over to Mr. Wirtz.  There was

1   testimony that he inquired through e-mails, and I don't quite

2   understand, this is one of the things that is open, he inquired

3   through e-mails as to what to do with payments, that Fidelity

4   saw those e-mails, forwarded its own e-mails on to Mr. Wirtz,

5   that came back but didn't take any action on the information

6   that was being transferred from Option One through to the Boles

7   Law Firm and back.  So there is a question as to what Fidelity

8   knew and what it should have done in light of that knowledge

9   whether or not the system had been posted.  Forgive me, but

10  you're going to have to get to the issues beyond what I want an

11  inquiry into, because you and I have a disagreement on what we

12  think the testimony showed and I'm moving forward on this.  The

13  question really centers on for today is the Trustee's right to

14  conduct discovery on those issues.

15          MR. GWYNNE:  Your Honor, are you saying then with

16  respect to the others issues then that I can't address them?

17          THE COURT:  You can address whatever you'd like to

18  address.  I'm just saying I disagree with you with your

19  characterization of the transcript and the hearing.

20          MR. GWYNNE:  Okay, I understand, Your Honor, and

21  that's why I tried to give specific citations, because I think

22  if you look at them, I'm not --

23          THE COURT:  There are other citations to the record

24  that would refute what you're saying.

25          MR. GWYNNE:  Okay, well, I think like Your Honor said

1   we disagree.

2        THE COURT:  I get to decide.

3        MR. GWYNNE:  I understand.  Your Honor is the one

4   sitting at the high spot.

5        THE COURT:  Have a seat, please.  We'll get to you.

6   I'm going to let one person argue at a time.

7        MR. CASH:  So I'm not allowed to make a statement on

8   the record at this time, Your Honor?

9        THE COURT:  No, not until it's your turn to make a

10  statement, unless you want to make an objection, but I don't --

11  this is oral argument, so I don't think it's evidentiary in

12  nature, Mr. Cash.

13       MR. CASH:  Your Honor, it would just go to making a

14  record of the fairness of the proceedings.

15       THE COURT:  Go forward.

16       You'll have your chance to argue.

17       MR. GWYNNE:  Thank you, Your Honor.

18       With respect to the second issue where Your Honor

19  believes there was a conflict in the testimony was whether the

20  loan -- who made the decision whether a loan was ready to be

21  sent for a Motion for Relief from Stay.  Ms. Goebel testified

22  on Page 52, Lines 1 through 8 that Option One requested the

23  Motion for Relief through a coding trigger in Option One's

24  system.  Mr. Simmons testified on Page 211, Lines 21 to 25 that

25  Option One's 45 to 60 days in arrears set the parameters for

1    that trigger.  He further testified in that same citation

2    that he didn't request the Motion for Relief be filed.  But I

3    don't want Your Honor to interpret that as being inconsistent

4    with saying Fidelity didn't control the system and the

5    parameters for when something does got to a Motion to Relief

6    from Stay, because I think the testimony was consistent on

7    that.

8         On Page 219, Lines 3 through 7 Mr. Simmons testified

9    that Ms. Kelly of Fidelity set up the trigger in this case, but

10   said that she had no authority to stray from the parameters set

11   by Option One, and said that on Page 245, Lines 21 to 24.  On

12   Page 222, Lines 18 to 21 Mr. Simmons testified that Ms. Kelly

13   made a clerical error when the -- that when this account was

14   established in the bankruptcy system, but on Page 244, Lines 11

15   through Page 245, Line 8 he testified that she interacted with

16   and received tasks from Andrea Fisher and Christine Johnson of

17   Option One.

18        The Court has obviously already sanctioned both

19   parties for what's happened here and while they may have both

20   had roles in various things that happened, the parameters for

21   when something goes -- becomes eligible for a Motion for Relief

22   from Stay is set up by Option One and Fidelity administers it.

23   It's the same thing for example with the way counsel is

24   retained.  Fidelity doesn't really retain the counsel.

25   Option One decides who its lawyers are going to be and then it

1  comes up with the system that Fidelity just administers.  For

2  example in some jurisdictions it may be give all cases

3  beginning A through H to this law firm, or giving cases that

4  end in 1 through 5 to this law firm.  All Fidelity does is

5  administer it.  So, there are things where there may be

6  involvement of both parties, but I think the duties were fair

7  -- were separate and that the testimony was consistent with

8  that.

9         The next issue that Your Honor believed discovery may

10 be appropriate on was the time monitoring and the effect on the

11 ability to review the file if any.  I don't think there's any

12 way that that's an issue here, Your Honor, respectfully.  In

13 the 6/28 transcript on Page 38, Lines 2 through 9 Mr. Wirtz

14 admitted that he was sitting on at least $1,800 in checks when

15 the Motion for Relief was filed.  On Page 54, Lines 4 through

16 21 Ms. Goebel testified -- and this is back to the 8/21

17 transcript -- that Mr. Wirtz had three to four days to prepare

18 an affidavit.  I wish I had that long, Your Honor, to file

19 motions for relief.  Often for clients that's usually something

20 they want filed yesterday.

21         On Page 83, Lines 3 through 6 Ms. Goebel testified

22 that it took her only five to ten minutes to validate the data

23 in an affidavit based on information on the website going

24 through the screens I think there was four or five of them.

25         On Page 46, Lines 17 through 21 Ms. Goebel testified

1  that she executed the affidavit the same day that she

2  received it on February 28th.  On Page 49, Lines 17 through 21

3  Ms. Goebel also said that Option One has "A really good

4  response time," and that's her quote, "A really good response

5  time," on answering questions.

6           The problem here was there was a clerical error in

7  setting up the file, which I think the record is clear on that

8  and because it was sent over late which caused the

9  misapplication of payments and the other main problem was the

10  holding of checks.

11           THE COURT:  But one of the problems is that the Court

12  is concerned about is the system, and when I say "the system"

13  I'm using the broadest of definition in that I mean the

14  relationship between Option One, Fidelity, and counsel, and the

15  computer systems that are being utilized, and what procedures

16  are in place to verify before a default is declared or a Motion

17  for Relief is filed that there really is a default and that

18  payments have been properly applied.  And what I heard

19  testimony on and it is not complete was a description of what

20  happened in this case, but no real admission as to what parties

21  should have done, or whether that was a violation of the

22  procedures that were in effect for these parties to follow.

23           For example the testimony was, though I have not seen

24  them, that there had been e-mails back and forth between

25  counsel, Option One, and that went through Fidelity and that

1  Fidelity actually saw regarding these checks.  Now, if

2  Ms. Goebel or Fidelity have the responsibility for verifying

3  the affidavit's accuracy, what does that encompass?  She

4  testified she opened up a screen and looked at what's on the

5  screen and that was sufficient.  I'm paraphrasing.

6         MR. GWYNNE:  Yeah, because she looked at several

7  screens.

8         THE COURT:  I know, but essentially --

9         MR. GWYNNE:  I understand what Your Honor is saying,

10 but --

11        THE COURT:  And here -- and yet here she has

12 information -- she directly has information that would have

13 alerted her to the fact that the screens were not correct.  All

14 right, so here's my question, this is what the discovery is

15 going to be:  At what point -- and again, you know, I've also

16 heard testimony Ms. Goebel is -- you know her employment may

17 also be at issue.  Who is she really working for and what is

18 her responsibility with regard to each of these entities if you

19 will.  But at what point is she responsible for keeping up with

20 and charged with looking into something more than a screen?  At

21 what point is she supposed to use the information that has been

22 made available to her?

23        Now, the same is true of Mr. Wirtz, frankly, and the

24 same is true of Option One, but this still happened.  I have

25 three individuals that I know had this information and yet no

1    one in the system said that it was their responsibility to

2    use that information to put the right information into an

3    affidavit or to stop the foreclosure or to -- excuse me, not

4    foreclosure, Motion for Relief.  What I am trying to get to is

5    what exists in this relationship, and again the relationship is

6    a very broad definition between counsel, Fidelity system, and

7    Option One to verify that when the loan is referred and the

8    Bankruptcy Work Station is opened that that loan history is

9    accurate and has been reviewed to that payments are being

10   property applied.  And forgive me, but the Court has tried many

11   cases on this issue with automated systems and I know there are

12   problems in the software and I'm sure that everyone sitting in

13   this room knows that there are problems with the system that

14   it's not entirely designed to deal with bankruptcy

15   circumstances.  And so I want to know what's being done to

16   insure that that information is accurate.

17          This is not a case where this should come as a shock

18   to anyone in this room that there can be problems with

19   accounting information when it's transferred from the regular

20   loan management system into a Bankruptcy Work Station and what

21   happens post-petition with those payments.

22          MR. GWYNNE:  Well, Your Honor, any time you have

23   human beings involved --

24          THE COURT:  No, I find the computers are actually

25   more of a problem than the human beings actually.

1       MR. GWYNNE:  Well, but no I think -- it's that

2  often, Your Honor, you said the software isn't set up for the

3  bankruptcy system generally which requires human intervention

4  to make changes and adjustments.  And when you have that you're

5  going to have mistakes on some loans.  I mean that's the

6  reality of the situation.  And, yes, there are procedures.  And

7  Your Honor may think they were insufficient, as you've already

8  sanctioned --

9       THE COURT:  I haven't heard --

10      MR. GWYNNE:  -- the parties.

11      THE COURT:  I haven't heard the procedures yet to

12  implement or to check for those systems.  I heard very detailed

13  information about what the individuals do, but I didn't hear

14  anything about checking e-mails, checking other systems, going

15  back and checking the loan histories, getting a loan history

16  before you institute a filing.  Maybe that's happening, I don't

17  know.  That's what part of this discovery is about.

18      MR. GWYNNE:  Well, I understand, Your Honor, but just

19  so I'm clear, I think the witnesses testified to what their

20  procedures were, what they do.  What Your Honor is saying is

21  you don't like it and that's not enough.  And I understand

22  that, but more discovery is not going to change what the

23  witnesses said the procedures are.  Now, that does not mean

24  that the procedures couldn't be better and maybe they could be

25  tweaked, but you have all the testimony in as to what people do

1   and how they handle it.  Those are the procedures that are

2   followed.  I believe the witness, Ms. Goebel, specifically

3   said, "These are the procedures I follow when I verify what's

4   on the affidavit."  And the witness from Option One said very

5   clearly that Fidelity handles that.  "I don't deal with that.

6   I put the information in the system.  That's our job, but I

7   don't verify the Motion for Relief.  Fidelity does that."

8   That's administrative, because if what's in the system is

9   correct, then that shouldn't be a problem.

10          We also have outside counsel that is retained and is

11  holding checks and that there's nothing -- we can't do anything

12  about his failure.  Now, if that information was in the

13  system --

14          THE COURT:  Well, his failure came originally from

15  Option One's failure, and then also from Fidelity's knowledge

16  of that particular situation and its failure to recognize it,

17  and then finally counsel's failure.  It's three levels.

18          MR. GWYNNE:  I understand that, Your Honor, and

19  that's why I'm saying that one can argue that the procedures

20  need to be changed.  But it doesn't mean they're going to be

21  any different than what the testimony is and has been.  And I

22  don't know that it's appropriate for the Court to rewrite the

23  parties' procedures as opposed to the parties doing that based

24  on the decision that Your Honor has entered, and the sanctions,

25  and the issues that have come out.  I mean I just think that --

1  respectfully submit that that's not an appropriate role for

2  the Court to redo someone's business model.

3        THE COURT:  No, but it may be appropriate for the

4  Court in order to protect the integrity of the system,

5  particularly with regard to Option One loans that certain

6  information be delivered every time a proof of claim or Motion

7  for Relief is filed, because I can't trust the information

8  that's being supplied based on what you're telling me the

9  system does and what the procedures of your institution are.

10 That's my problem.  I'm dealing with --

11        MR. GWYNNE:  I understand.

12        THE COURT:  -- thousands of loans.  These entities in

13 front of me today are very large filers in this District.

14 You're dealing with systems that are automated and with

15 individuals that have specifically defined policies and roles

16 and while I agree with you it is not this Court's

17 responsibility to write your procedures and I won't undertake

18 that, I will require that certain information be verified prior

19 to the filing now that I know your procedures in my opinion are

20 insufficient.

21        MR. GWYNNE:  Well, and Your Honor I --

22        THE COURT:  And would you like me to tell you what I

23 have in mind or would you like to work with the U.S. Trustee

24 for what an appropriate resolution might be?

25        MR. GWYNNE:  Well, what I think I'd like to do maybe,

1  Your Honor, is visit that at the end of the hearing after

2  maybe we can take a break and have a chance to speak with

3  counsel for Fidelity.  But with respect to when Your Honor is

4  talking about -- and I understand you're talking about the

5  integrity of the system and I understand that's important to

6  you in your role --

7       THE COURT:  It's very important to me.

8       MR. GWYNNE:  I understand.  But the Bankruptcy

9  Court's jurisdiction is based on an effect on the rates.  I

10  mean the Supreme Court said in 2006 --

11       THE COURT:  Actually the Bankruptcy Court's

12  jurisdiction is broader than that.  Once it has come to light

13  of a Bankruptcy Judge that there is -- that the integrity of

14  their system is being abused, and you've read the Jones

15  decision I'm sure, the Court has the right to protect the

16  process from the filing of false affidavits, Motions for Relief

17  from the Stay that are not properly filed, proofs of claim that

18  aren't properly calculated.

19       You may not like the fact that you have -- that the

20  Court is interested in this, but I'm going to tell you as I did

21  to the Wells Fargo individuals when we went through this with

22  them that I am not going to allow false affidavits and false

23  proofs of claim to be filed.  Now, I'm not saying at this point

24  that -- what I'm saying at this point is I want -- I have

25  reason to believe that your system is insufficient to verify

1    the information that's being presented to this Court.  You've

2    admitted that those policies are what they are and that if I

3    find them to be insufficient, then they are just insufficient.

4              MR. GWYNNE:  Well, you --

5              THE COURT:  So now I have to move to protect my

6    system, this particular process from those insufficiencies.

7              MR. GWYNNE:  Well, and, Your Honor, and I mean this

8    with all due respect, but Your Honor's already issued sanctions

9    and a final order where you liquidated the amount of the

10   sanctions.  The only --

11             THE COURT:  As to that individual.  That individual

12   requested sanctions.  That does not stop this Court for

13   conducting an inquiry, a broader inquiry, which is what I'm

14   doing, into the way Fidelity, Option One in particular, and the

15   Boles Law Firm have conducted themselves in the District.  I

16   have an Order to Show Cause outstanding on these issues.

17             MR. GWYNNE:  And, Your Honor, the Order to Show

18   Cause, there was an order entered on July 11th where sanctions

19   were issued.  And the only -- there were two instances in which

20   the Court was retaining jurisdiction in that order.  One was

21   potentially with respect to further fees, not sanctions, and

22   the other was just for an explanation.  And, Your Honor, I

23   think with the --

24             THE COURT:  I haven't gotten the explanation.

25             MR. GWYNNE:  I think the explanation was there in

1   full.  I think Your Honor doesn't like what you heard, but I

2   think the explanation was there.

3           Your Honor, I think sort of what you're asking about

4   now, and one of the things you thought discovery may be

5   appropriate on is why use Fidelity as the communication medium.

6   And one can make the same argument about well why sometimes

7   does local counsel have to contact lead counsel who deals with

8   the client.  And it's because if there's someone involved on a

9   day-to-day basis and Fidelity provides those administrative

10  services on a day-to-day basis they should be involved in the

11  communications.  For example Fidelity, one of the

12  administrative services they provide, they gather documents to

13  attach to the proofs of claim.  They gather --

14          THE COURT:  I don't really disagree with that.  My

15  problem was that Fidelity took the position that they didn't

16  have to look at any of these communications and they weren't

17  responsible for the knowledge that transferred through them.

18  And I think I even said on the transcript, if that's the truth,

19  then why go through them at all?  And there we go, we get back

20  to the crux of this particular issue.  Are the parties

21  responsible for the information?  Are they responsible for

22  verification?  Do they have the authority and the

23  responsibility to act on that information, or do they get to

24  say that's not my job?

25          MR. GWYNNE:  Well, I don't think -- you know, I don't

1    think anyone is saying that the parties don't have a

2    responsibility when they sign an affidavit or if they're

3    putting information in the system that they know is going to be

4    used for an affidavit to make sure that it's correct.  That

5    doesn't mean in every case it's going to be correct; it's not.

6    And then the question becomes whether the procedures are

7    sufficient or not and how often this problems arises.  Those

8    are the type of questions.  But this Court and Your Honor

9    mentioned the Jones case.  And I don't know happened ultimately

10   after it was remanded, but if I'm correct I think the non-

11   equitable relief that Your Honor entered was remanded to

12   determine whether that was appropriate in light of the adequate

13   remedy at law.  And like I said, I'm not sure where that ended

14   up, although listening to Your Honor today I might have an idea

15   of where that's ending up or may end up.  But I think that's

16   important here too when you issued the monetary sanctions and

17   now it's at some point -- I'm not even sure what the basis was

18   for the sanctions that were issued.  When that Order to Show

19   Cause was issued on May 9th --

20          THE COURT:  There actually were several sets of

21   sanctions based on the failure of parties to comply with

22   various orders.  This, as I recall, and again this is just from

23   my recollection, there were sanctions that were imposed upon

24   either individuals or entities on their failure to appear --

25          MR. GWYNNE:  Yes.

1        THE COURT:  -- before the Court.  And as I recall

2  there may have been two sets of sanctions issued on simply

3  failure to appear and address the Court.  You may correct me if

4  I'm wrong, but I think that's the way this originally was set

5  up that there was a hearing maybe Mr. --

6        MR. GWYNNE:  Wirtz.

7        THE COURT:  -- Wirtz didn't show --

8        MR. GWYNNE:  He did.

9        THE COURT:  -- for one hearing.  Maybe there was one

10  hearing -- and again don't hold me to his because you're really

11  asking me to go down a time line that I don't have in front of

12  me.

13        MR. GWYNNE:  I understand.  I looked at that

14  recently, so what happened, Your Honor, is on May 9th

15  Your Honor issued an Order to Show Cause for the parties to

16  appear and explain what happened.  There was nothing in that

17  Order to Show Cause about the potential that somebody would be

18  sanctioned.  Now, Your Honor issued sanctions not just for

19  failure to appear, but also issued sanctions for filing

20  false --

21        THE COURT:  On May 9th?

22        MR. GWYNNE:  -- affidavits.

23        THE COURT:  Wait, on May 9th?

24        MR. GWYNNE:  No, on July 11th.

25        THE COURT:  Okay, so July 11th.

1    MR. GWYNNE:  May 9th was the Order to Show Cause

2  and basically --

3    THE COURT:  Okay, July 11th who appears at that

4  particular hearing?

5    MR. GWYNNE:  Mr. Wirtz, I believe Ms. Goebel, and Mr.

6  Cash.

7    MR. CASH:  I'm sorry, the date of what hearing?

8    THE COURT:  July 11th.

9    MR. GWYNNE:  Well, I think it was the June 26th

10  hearing when the order was issued on July 11th, I believe is

11  the way it worked.  The hearing was -- there were two main

12  hearings on the 26th of June --

13    THE COURT:  As I recall, Mr. Wirtz showed up on the

14  second hearing, but Ms. Goebel did not.  I'm not positive about

15  that.

16    MR. CASH:  I think you're correct, Your Honor.

17  Mr. Wirtz had filed a Motion for Continuance.  Ms. Goebel had

18  been called to Bankruptcy Court in Ohio and was in court --

19    THE COURT:  The day before.  I think it was like the

20  day before.  I know it wasn't within the eight days of the

21  local rules and --

22    MR. CASH:  You're right, it was -- I think he filed

23  it late and Ms. Goebel was already in Ohio at the time.

24    MR. GWYNNE:  The only --

25    THE COURT:  And I think at that point I did not

1  accept that as an excuse because if she had to testify she

2  would have known long before that hearing date and it should

3  have been filed at the time so the Court could have made

4  arrangements instead of having everybody come.

5          MR. CASH:  I don't disagree, Your Honor.  We didn't

6  -- we weren't informed by Mr. Wirtz.

7          THE COURT:  I understand, but as I recall that was

8  one hearing.  Then we had to have a second hearing because

9  Ms. Goebel wasn't at that hearing and I think that was the one

10 in July --

11         MR. GWYNNE:  Yes.

12         THE COURT:  -- or August?

13         MR. GWYNNE:  Well, Your Honor, let me read you -- it

14 might help to just read briefly the order that was entered on

15 July 11th, Docket Item Number 46.  It says, "It is ordered that

16 Dory Goebel and Option One are jointly sanctioned $5,000 for

17 failing to appear on June 26."  That's why I'm saying even

18 though the hearing was on the 26th, the sanction order was

19 entered --

20         THE COURT:  For failure to appear.

21         MR. GWYNNE:  Well, that's the first one, correct.

22 The next order of that paragraph, "It is further ordered that

23 Dory Goebel and Option One are jointly sanctioned $5,000 for

24 filing a false affidavit payable within ten days into the

25 registry of the Court."

1    The next paragraph, "It's ordered that D. Clay

2  Wirtz is sanctioned $1,000 for failing to amend."  And then

3  there's the scheduling the hearing on the 21st, and then the

4  last paragraph is awarding the attorney's fees.

5    But the Order to Show Cause that was the original

6  from all this emanated was the one on May 9th, which all that

7  it required parties to do was to "Explain the amounts due on

8  the mortgage loan for the above captioned debtors."  So, even

9  if -- if someone doesn't appear Your Honor may be able to issue

10 sanctions for that.  But what I'm saying there was no --

11    THE COURT:  Here's my problem with that, because this

12 happens frequently.  The debtor objects to a mortgage lender's

13 either Motion for Relief from the Stay, a proof of claim, you

14 know, some particular item.  Sometimes the -- very often the

15 lender doesn't show.  Nothing happens.  If the Court -- and the

16 Court can order that the proof of claim be stricken, or it can,

17 you know, it can set the amounts.  My concern again, and this

18 is why the first order said to explain the amounts due by the

19 debtor, is that I can't tell -- I can strike amounts on a proof

20 of claim, or I can say that there's no default, but the reality

21 is I can't tell if the information that is being given to me

22 either by the debtor or by the lender is correct, or whether

23 the truth lies somewhere in between.  So, I rarely will strike

24 a proof of claim for obvious reasons including debtor who have

25 come in and said they want the whole proof of claim stricken,

1   principal, interest, everything --

2         MR. GWYNNE:  And the lien.

3         THE COURT:  -- because no one shows up, a great

4   trick, it just doesn't work, because I'm trying to get to the

5   true number.  I am not trying to penalize the lending industry.

6   In fact I'm trying to get to the legitimate number that is owed

7   to them so that the debtors have to repay it, and that the

8   plans can go forward, and that they can receive their money.  I

9   am not in the business of just, like maybe some judges you've

10  been before, of just striking all amounts because you

11  procedurally don't show up on time, you don't know that there's

12  something to show up on time.  For whatever my reputation, I am

13  very interest in getting to the right number so that you are

14  assured of collecting every penny that you are due.

15        MR. GWYNNE:  And, Your Honor, I'm not questioning the

16  honesty of the Court's intentions and what you're trying to do.

17        THE COURT:  But what happens is when I issue an Order

18  to Show Cause and I say I need the loan history essentially, I

19  need to know what is due, that's what I'm after.  I'm trying to

20  determine how much is actually owed so that at some point in

21  this case's history everyone in the room, you know, the lender,

22  the servicer if it's a different entity, debtor's counsel, and

23  the Trustee can all say, okay, this is the number.  Here's the

24  arrearage.  Here's the amount due as of this particular date.

25  All of the accounting records are clean and clear and now we

1  can move forward and just receive and apply payments.  And we

2  won't have, hopefully, any misunderstandings, or any

3  difficulties, or problems.  It's as much to avoid a potential

4  -- well, I won't even say a potential, a problem in the future

5  as to get to the resolution of the matter that's in front of

6  me.  I find that if I don't get to a number when there is a

7  problem on a Motion for Relief, or with a proof of claim, or

8  with a plan confirmation process, if I just rule without the

9  participation of the lender and the servicer because they don't

10  show up or because their counsel doesn't know anything about

11  anything, then all I've done is put off and not really resolve

12  the controversy that's in front of me.

13       MR. GWYNNE:  I'm not arguing with that, Your Honor,

14  and maybe you misunderstood the point I was trying to make.  I

15  don't dispute that that's what Your Honor was looking to do,

16  and I think you've actually already don't that in this case.  I

17  think in one of the transcripts you ordered the loan current as

18  of a date.  So, I think we're beyond that.

19       The point I was trying to make is that -- I believe

20  the case law says that before you sanction someone, unless it's

21  something that happens in your courtroom before your eyes, that

22  you issue an order to show cause if you're doing it sua sponte,

23  you indicate in the Order to Show Cause what the potential

24  bases for the sanctions would be so the parties know they're

25  coming to a hearing where they may be sanctioned on the merits,

1    not because they're not there.  That may be a different

2    situation.

3            THE COURT:  All right, let's talk about it, because

4    we're at the June 26th hearing.  I requested that certain

5    parties appear.  They didn't appear.  So one of the sanctions

6    was for failure to appear.

7            MR. GWYNNE:  Correct.  Right.

8            THE COURT:  So that's going to be -- that's done.

9            The second sanction to Wirtz, Goebel, and Option One

10   was based on the information that Wirtz gave me at that hearing

11   as counsel for Goebel -- well, at the time Goebel and

12   Option One.  I'm telling you the truth.  I mean your counsel

13   stood up in this courtroom and said, "I had the checks or I

14   knew of the circumstance, I filed it."  He's your counsel.

15   Goebel signs the affidavit, a representative of Option One, and

16   says this is the correct amount when in fact Option One has

17   transmitted those payments to counsel.

18           MR. GWYNNE:  I understand --

19           THE COURT:  Okay, so --

20           MR. GWYNNE:  -- no, I understand --

21           THE COURT:  -- so that is something happening right

22   in front of me.

23           MR. GWYNNE:  Well, no, but Your Honor that's not what

24   I think the case law talks about.  It would be like if somebody

25   did something in your courtroom that was abhorrent.  I'm

1    talking about that type of sanction.

2            THE COURT:  I think it's pretty abhorrent to file a

3    false affidavit when you're sitting on $1,800 in payments --

4            MR. GWYNNE:  Your Honor --

5            THE COURT:  -- and that the client transferred them

6    to you.

7            MR. GWYNNE:  -- I hear what you're saying,

8    Your Honor, but what I'm saying to you, that's not something

9    that's considered to happen before Your Honor in the court.

10   And for a party to miss a hearing and Your Honor sanctions them

11   for failing to appear even though they're in another court, put

12   that issue aside.  You sanctioned Option One and Fidelity for

13   filing a false affidavit when there was no notice in the Order

14   to Show Cause that Your Honor was considering sanctions --

15           THE COURT:  Okay, --

16           MR. GWYNNE:  -- at that hearing and --

17           THE COURT:  -- would you like move --

18           MR. GWYNNE:  -- what the basis was.

19           THE COURT:  Would you like to move to reconsider

20   that?

21           MR. GWYNNE:  No, I think it's a final order which is

22   one of the reasons why we had --

23           THE COURT:  Well, so you don't want it reconsidered?

24           MR. GWYNNE:  No, no, Your Honor, I'm mentioning it

25   because it goes to one of the issues I wanted to talk about.

1  I'm getting a little ahead of the game, because, Your Honor,

2  I'm following Your Honor's lead.  But it goes to what we see as

3  the fairness of the process here and how the lender feels about

4  this process.  I understand Your Honor is trying to protect the

5  integrity of the process.

6          THE COURT:  Part of my problem in this, you know, the

7  process is trying to get the cooperation of the lender.  I mean

8  look at it from the Court's perspective.  There's a hearing on

9  the 9th.  Everyone is here, no one shows.  I have to send out

10  an Order to Show Cause just to get the participation and

11  information that deals with the motion for relief.  I have a

12  hearing on that Order to Show Cause where the principals who

13  have been ordered to show cause don't show the Court the

14  courtesy of either appearing or advising the Court that they

15  have a conflict in sufficient time for the Court to reschedule

16  the hearing.

17          Wait, wait, I'm not finished.

18          Third, I have counsel, local counsel who manages to

19  show up for the second one, not the first one, and says

20  essentially, yes, I received $1,800 worth of payments and I

21  knew those existed and they came from my client, and yet I

22  still filed the Motion for Relief and I prepared and they

23  signed the affidavit even though we all knew that there were

24  $1,800 worth of payments.  Now, that was one issue.  There was

25  also an issue about the application of a payment post-petition

1  pre-petition.  So, those are two completely different issues.

2  He doesn't know anything about anything when it comes to that,

3  because he's the lawyer and says, "I just look on screens."

4  This is what everybody tells me, "I just look on the screens."

5  So, I said, "I need the people who look on the screens to tell

6  me why these things happen."

7         I go to a third hearing where I finally get the

8  people who are supposed to be responding to this in the room

9  and what I hear is this one did this, they should have done

10  that.  They did this.  There is -- everyone wants to

11  compartmentalize what they do and no one wants to say I should

12  have done this.  I did not hear out of anyone's mouth on that

13  stand an admission that it was their responsibility to look at

14  other information or verify it.  Every single witness said, "I

15  knew this, but it was not my responsibility to alert, or to

16  change, or to say stop, or to verify information."

17         MR. GWYNNE:  Well, I --

18         THE COURT:  So, from this Court's perspective if we

19  want to talk about fairness, why is it taking me three hearings

20  to find out factually what happened --

21         MR. GWYNNE:  Well, Your Honor, --

22         THE COURT:  -- why it is taking me multiple hearings

23  to determine what the insufficiencies in this system are so

24  that this does not happen again?  Because, frankly, based on

25  the testimony that I've heard I am very concerned about this

1 particular system being insufficient --

2        MR. GWYNNE:  Well, Your Honor --

3        THE COURT:  -- and very concerned about the other

4 proofs of claims and Motions for Relief that are on file in

5 this courtroom.

6        MR. GWYNNE:  Well, Your Honor, with respect to why

7 did it take three hearings, I respectfully think it's a little

8 bit unfair when someone was in court in another jurisdiction

9 the same day.  So, from our perspective it seems like two was

10 the number.  Why it took two, --

11        THE COURT:  Why is it unfair --

12        MR. GWYNNE:  -- I wasn't involved in the case at that

13 point, Your Honor.

14        THE COURT:  Okay, why wasn't the Court given the

15 consideration of being able to reschedule that in sufficient --

16 if you were supposed to be in court somewhere else, clearly the

17 witness would have known.

18        MR. GWYNNE:  Your Honor, the witness knew and

19 Mr. Wirtz knew well before 48 hours.  He filed the motion,

20 unfortunately, only 48 hours before.  That's one of the reasons

21 why I think courts say if you're going to sanction somebody on

22 the merits you have to give them notice of the potential

23 sanctions, because he -- he files a Motion to Continue when my

24 client tells me he knew well before then about this conflicting

25 dates, and then they end up getting punished for it when

1 technically there wasn't anything on that day for sanctions

2 on the merits of filing the false affidavit --

3     THE COURT: Except for failure to show to respond to

4 an Order to Show Cause.

5     MR. GWYNNE: Right, right. But why that's important

6 though, Your Honor, is because in one of the transcripts, and I

7 think there's a citation in Fidelity's papers to it in a

8 footnote, you say that you didn't hold Fidelity in contempt for

9 anything. But when Your Honor was talking about ten minutes

10 ago you said that you were sanctioning people for failure to

11 follow orders which is contempt. I don't know, Option One

12 doesn't know, and I don't think Fidelity knows whether they

13 were sanctioned under the Court's inherent power under Rule 11,

14 under some other power, whether it's civil contempt, whether it

15 was criminal contempt --

16     THE COURT: Well, if it was criminal you would have

17 been referred to the U.S. Attorney's Office.

18     MR. GWYNNE: Well, but -- well, in Bankruptcy Court I

19 don't think you have jurisdiction for --

20     THE COURT: So, let's not --

21     MR. GWYNNE: -- criminal.

22     THE COURT: -- let's not go there.

23     MR. GWYNNE: No, but, Your Honor, my point is that

24 there are some -- for example when things aren't remedial or

25 compensatory they can be criminal, but you also look at the

1 dollar amount. I'm just pointing out, Your Honor, that we

2 don't know what the basis for it was and didn't feel like there

3 was fair notice of it. So, let me just finish with some of the

4 factual things and then I'm going to have more on the fairness

5 that I think is very important from my client's perspective.

6 And I do appreciate Your Honor giving me plenty of time, and

7 you're talking to me a lot too, and I appreciate that so I can

8 answer your questions.

9        With respect to the Bankruptcy Work Station and who

10 set that up, Your Honor thought more testimony was needed. The

11 witness from Option One testified undisputed that that was set

12 up by Ms. Kelly. I understand Fidelity doesn't dispute that,

13 but Ms. Kelly was at Option One's premises, and did work with

14 the two folks that our witness testified I believe it was

15 Christine something and Alicia something -- but that there were

16 two people, not him but his supervisors, they assigned tasks to

17 Ms. Kelly. But there's no dispute as to who set it up and that

18 there was an error in when it was set up.

19        With respect to the fees, Your Honor mentioned the

20 fees for the first time at the last hearing.

21        THE COURT: It was the first time I heard about the

22 fees.

23        MR. GWYNNE: Well, but, Your Honor, I don't think

24 anybody that works for free except lawyers at pro bono I guess.

25        THE COURT: No, no, no, it wasn't the fees of the

1   lawyers, it was the fees that the -- as I appreciated the

2   testimony, the Fidelity system was a contract -- and again I'm

3   paraphrasing, the Fidelity system was available to the client,

4   meaning Option One, based on the contract that existed between

5   those two entities. And the testimony was that Option One was

6   not charged for having that particular system or contract, and

7   that instead, and this is the first I had ever heard this,

8   instead the lawyers were charged to participate and to access

9   that information and --

10          MR. GWYNNE:  I don't think it was participate.

11          THE COURT:  Well, they --

12          MR. GWYNNE:  It was one a task basis.

13          THE COURT:  Wait, well, I don't -- you know there was

14  a question as to first whether they were a member or they had

15  license on this and there was a fee for that, and then it was

16  on a task basis.  Now, let me ask you this question.  My

17  question then was who pays those fees for access, and no one

18  knew.  Or how were they charged?  Were they charged to a

19  debtor?  That's what I --

20          MR. GWYNNE:  Your Honor, I --

21          THE COURT:  No one knew the answer to that.  That's

22  why it was a question.

23          MR. GWYNNE:  Well, but I think it's -- that wasn't

24  within the scope of the Order to Show Cause and I think that's

25  something -- see we --

1          THE COURT:  It's part of the order of what the

2    debtor owes.  I want an accounting for what this debtor owes

3    and if those charges --

4          MR. GWYNNE:  Understood.

5          THE COURT:  -- are on the debtor's account --

6          MR. GWYNNE:  But they're not.

7          THE COURT:  Well, I don't have the accounting, do I?

8          MR. GWYNNE:  No, but Your Honor what I'm saying is

9    that that's why you didn't have a witness here to deal with it,

10   because it wasn't considered part of what the debtor owes,

11   because those charges can't be passed --

12         THE COURT:  Then all I need --

13         MR. GWYNNE:  -- through to the debtor.

14         THE COURT:  -- was somebody who could actually say

15   that those charges are not a part of the accounting, because I

16   have the accounting and this is all the debtor owes.  But I

17   didn't have that.

18         MR. GWYNNE:  I understand, Your Honor.

19         THE COURT:  And here's my issue:  Different

20   individuals testify to different things.  Your first counsel,

21   Mr. Wirtz, filed a motion in this Court and an affidavit saying

22   the debtor was in default and that no payments had been made.

23   That turned out to be wrong.  Forgive me, but you can stand up

24   here and in good faith tell me this was not charged to the

25   debtor, or that was not charged to the debtor, but until I have

1 the representative of your client on the stand or I have

2 evidence as to what the account looks for, I can only say that

3 you are as best you can representing your client and

4 representing what you believe to be the facts. But that is not

5 the same as evidence and that's not the same as what the facts

6 are.

7 MR. GWYNNE: I understand, but, Your Honor, what this

8 is becoming and this is a fairness issue which I didn't want to

9 address again, but it's becoming the world's largest fishing

10 expedition into the inner workings of a company. You had --

11 there were some problems here. Your Honor issued sanctions. I

12 don't think, respectfully, the parties need the Court to fix

13 it.

14 THE COURT: The Court needs to fix it. This is the

15 Court's Order to Show Cause. The Court is concerned about the

16 conduct of the parties and how it affects the integrity of this

17 District's bankruptcy system. That's as clearly as I can put

18 it to you.

19 MR. GWYNNE: I understand that, Your Honor. I

20 recognize Your Honor's sincere desire and that that is your

21 interest here.

22 THE COURT: No, that's my concern. It's more than

23 just curiosity.

24 MR. GWYNNE: Yeah, I didn't mean to suggest that by

25 using that term.

1        THE COURT:  Well, one of the pleadings says that

2   this was just the Court's curiosity.  This is not about

3   curiosity.

4        MR. GWYNNE:  I didn't say it was about curiosity.

5        THE COURT:  This is about assuring myself that when I

6   make a decision on a motion that you bring before this Court,

7   or a proof of claim that you file, or an affidavit that you

8   file -- and when I say "you" I mean Option One --

9        MR. GWYNNE:  I understand.

10        THE COURT:  -- I mean the servicer -- that I can rely

11   on that information and I can protect your interests, and I can

12   protect the interests of the debtor, and I can protect the

13   interests of other creditors.  I do not have an agenda; I just

14   want to make sure that the information upon which I make

15   decisions is accurate.  That is the beginning and end of what I

16   am trying to do.

17        MR. GWYNNE:  I understand that, Your Honor, but from

18   the perspective of Option One, there are people that -- people

19   file proofs of claim, debtors object to them and say, "That

20   amount is wrong.  My books and records show A, B, C."  That

21   doesn't result in an order to show cause.

22        THE COURT:  It does when I see that there are

23   deficiencies in a system and it has for many lenders, I'll tell

24   you.  Countrywide, SBS, Fairbanks, you know, SBS, Wells Fargo,

25   Ocwen, when I see that a system has -- well, I start with

1   discovery.  Does it have insufficient protections or policies

2   in order to insure that the information is accurate?  If it

3   does not, then what can be done from the Court's perspective to

4   assure that the information that is being presented is

5   accurate?

6           The issue that I have, and you know this as well as I

7   do, is that many debtors are poor, uneducated, and can't afford

8   to challenge every single proof of claim, or everything that

9   happens in their system.  The Court has to be able to rely on

10  creditors to file -- filing accurate proofs of claim.  The

11  integrity of this system demands that I can rely on creditors,

12  particularly mortgage lenders, because you are often the

13  largest lender in the case, the most important creditor in the

14  case, let's face some facts.  And I want you to get every dime

15  to which you are entitled.  It is not my intention or my job

16  that you should be prohibited from collecting anything to which

17  you are entitled.  My only concern based on what I am hearing

18  in this case is that Option One's system through its servicing

19  agent, Fidelity, is insufficient to insure that accurate

20  information is being presented to this Court.  That's what I'm

21  after, accurate information.

22          MR. GWYNNE:  I understand that, Your Honor.  I would

23  just like to turn to the fairness issue, but before I do that

24  could I have just a minute to confer with counsel?

25          THE COURT:  Absolutely.

1    MR. GWYNNE:  I just wanted to confirm that at the

2    end if we could have the opportunity to chat --

3    THE COURT:  Yes, you may.

4    MR. GWYNNE:  -- we'd appreciate that.  Thank you,

5    Your Honor.

6    With respect to the fairness issue, and as I said, I

7    understand and acknowledge that the Court's concern is honest

8    and sincere.  I do respectfully submit that these proceedings

9    have gone beyond the realm of fairness in many ways to my

10   client and I think lack an appearance of fairness.  For example

11   I mentioned already -- and this was a Mr. Wirtz's issue, not a

12   Court's issue, but not filing the motion until two days before,

13   but then I think it became a Court issue when my client was

14   sanctioned without notice that there were sanctions on the

15   merits going forward that day.

16   THE COURT:  My problem with that particular issue is

17   when you send Mr. Wirtz in to represent your interests, I can't

18   get into the difference between who made the decision, who told

19   whom what information.  If you had filed a Motion to Reconsider

20   on the basis that it was your counsel's fault and not your

21   fault, that in fact gave the information in a timely fashion to

22   your counsel, I could have revisited that particular issue.

23   But when I have counsel standing in front of me and he says,

24   "My client is not here because they're at a different hearing.

25   I filed this motion 48 hours ago.  Clearly my client knew that

1   they were going to be at the hearing before," and doesn't say

2   "It's my fault, Your Honor, I should have filed this, you know,

3   three weeks ago." He didn't say that. He indicated --

4        MR. GWYNNE: Oh, no, I understand and that's why I'm

5   saying that --

6        THE COURT: That really becomes an issue between you

7   and your lawyer and I'm not going to -- I can't get into that

8   unless you file a Motion to Reconsider and say, "Don't sanction

9   us, sanction him more." And I would be willing to hear that

10   from you. But you sent a lawyer in here to represent your

11   interests. You file a motion. You can't guarantee it's going

12   to be granted. Anyone, including Mr. Wirtz, who knows my

13   reputation knows that you should assume it's not going to be

14   granted if it's not timely filed, because we are trying to run

15   a system that, frankly, is thousands of cases. And all we're

16   asking is the courtesy of enough time to reschedule a hearing,

17   particularly when it wasn't a problem that was unanticipated.

18        MR. GWYNNE: And, Your Honor, and I do think we've

19   beat that dead horse. I think I said what I think of it --

20        THE COURT: I understand.

21        MR. GWYNNE: -- and I think that I understand what

22   Your Honor is saying.

23        THE COURT: Okay, so that's one issue and --

24        MR. GWYNNE: Right.

25        THE COURT: -- I told you what I think your client --

1          MR. GWYNNE:  Right.

2          THE COURT:  -- should have done if that was the case.

3          MR. GWYNNE:  Understood.  But often too, Your Honor,

4    in this climate and in this Court Your Honor is well known for

5    the Jones decision and other things.  That's another reason why

6    I think that it's particularly important that the proceedings

7    appear to be fair --

8          THE COURT:  I agree.

9          MR. GWYNNE:  -- because of Your Honor being well

10   known in this industry.

11         THE COURT:  I was going to say I think that I might

12   be well known, but I also think I might be misunderstood.  I

13   will say in my own defense that I believe when most counsel

14   come into the courtroom they are a little bit surprised at my

15   willingness to give them as much time as they need and as much

16   opportunity to present their cases and their information.  And

17   they are, I think, fairly surprised that my agenda is not to

18   harm the lending industry, but to try to get to an accurate

19   accounting of the information so that all the parties in the

20   process can rely on it.  When I don't get cooperation do I get

21   a little testy?  I suspect most judges do.

22         MR. GWYNNE:  Understood.

23         At the hearing that took place on the 26th where

24   Mr. Wirtz appeared on behalf of himself and Option One, and

25   having reviewed the transcript, Mr. Wirtz really put forth no

1  defense for Option One when Your Honor issues $10,000 of

2  sanctions against Option One.  He didn't bat an eye when you

3  sanctioned him a thousand dollars.  The next 20 pages of the

4  transcript dealt with that issue.  When he on Page 6, Lines 18

5  to 21 said he was very sorry that the Court was required to

6  bring parties here regarding their accounting practices, again

7  putting it on Option One or Fidelity, not taking responsibility

8  for the fact that he was holding $1,800 at least in checks and

9  did nothing to -- if that was addressed in the affidavit we

10 wouldn't be here.  He could have stopped it by himself.

11          THE COURT:  Absolutely.

12          MR. GWYNNE:  And, Your Honor, of course did a good

13 job searching that out at the hearing, but he told the Court

14 also that he was prepared to tell Option One to take it or

15 leave it on Page 22, Lines 10 through 14.  I didn't know what

16 he meant by that.  It was sort of out of the blue.  But it's a

17 compound of things.  He also said that Option One had to

18 explain what happened with the December 7th payment.  He said

19 that on Page 21, Lines 12 through 14.

20          THE COURT:  That was the application of the pre and

21 post-petition amount.

22          MR. GWYNNE:  Well, I think that was October,

23 November.  The December one I think is the one that was sort of

24 in no man's land.  Our witness testified that they started

25 sending payments to him in December.  I don't know if that

1  means the December payment or the January payment.  But he

2  told the Court that was most troubling that Option One would

3  not apply payments even if the Court ordered it to do so on

4  Page 44.

5        THE COURT:  I found that a little disconcerting.

6        MR. GWYNNE:  Yeah, actually I was glad to see that

7  Your Honor even remarked that he should never say that.  I mean

8  and to me that's sort of a red flag that he's not there

9  representing us, or certainly is there with competing

10  interests.  And Mr. Simmons testified that he would have

11  followed counsel's advice on what to do.  And certainly if

12  they're going to follow his advice, they're going to follow

13  what Your Honor says.

14        THE COURT:  If it makes you feel any better, I did

15  not believe that Option One would not apply payments if I

16  ordered them to do so.  I don't typically assume that a

17  national lender is going to completely ignore a court order.

18        You know, I think in all honesty Mr. Wirtz stood in

19  front of me with an attitude of I don't know anything about

20  anything and I just do as I'm told.  That's part of why, to be

21  honest, I insist on having the lender or servicer's

22  representatives here, because very often local counsel -- I'm

23  not just saying just Mr. Wirtz, but very often local counsel

24  will hide behind the mask if you will of I just do as I'm told.

25  They send an order.  I send it back.  It's very automated.  I

1　don't speak to anybody.  I don't know anything about

2　anything.

3　　　　　MR. GWYNNE:  I just want to make sure Your Honor

4　understands, there is no local counsel here.  I know that was

5　an issue at the hearing.  And to the extent that local counsel

6　may mean in different jurisdictions, --

7　　　　　THE COURT:  Right.

8　　　　　MR. GWYNNE:  -- but there is no national --

9　　　　　THE COURT:  I understand.  He had the communication

10　directly --

11　　　　　MR. GWYNNE:  Correct.

12　　　　　THE COURT:  -- and wasn't going through another law

13　firm.  When I say "local counsel," I mean for an out of state

14　client who uses other individuals and the only way in fairness

15　to your client I can get to the bottom of what actually

16　happened is to get someone who tells me what the accounting

17　system said, was it right, was it wrong, what are the

18　procedures, which is why unfortunately I'm required to go on

19　these Orders to Show Cause to get people physically in the

20　room.  Because very often the counsel for the lender, and in

21　this case it's what happened, cannot give me any information.

22　　　　　MR. GWYNNE:  Well, yeah, and I think he could have

23　but didn't want to and the --

24　　　　　THE COURT:  Okay.

25　　　　　MR. GWYNNE:  -- client wasn't there, because

1  Your Honor had --

2      THE COURT:  Well, I have to assume he's not lying to

3  me.

4      MR. GWYNNE:  Well, no, no, but I mean Your Honor had

5  to drag out of him on Page 38 of that transcript the fact that

6  he was holding $1,800.

7      THE COURT:  Well, believe me, I'm sure he did not

8  want to admit to me that he had the money sitting in his firm.

9      MR. GWYNNE:  And then I thought also troubling from

10  the standpoint of fairness to my client, keep in my mind my

11  client has these transcripts, they've read them.  They're

12  looking at this whole process, is it fair to them, or are they

13  getting railroaded by the whole process.

14      THE COURT:  Or railroaded by their own lawyer.

15      MR. GWYNNE:  In part, in part --

16      THE COURT:  Yeah.  And how am I suppose to stop that?

17  He represents these things to me.  I get you here.  You do have

18  the option of a Motion to Reconsider, but to be honest it's not

19  my job to protect you from your own lawyer.

20      MR. GWYNNE:  No, well, Your Honor, to a certain

21  extent I agree, but when it's clear that a lawyer may not be

22  acting consistent with his duties to the client, like for

23  example when he says, "Your Honor, I have checks dated

24  February 3rd through May 12th."  And then he says, "But, oh,

25  Your Honor, I didn't stamp these.  They could have sent them

1  all to me at once."  Who is going to do that?  Who is going

2  to hold -- I'm going to draft a letter to you today and I'm

3  going to hold it for three months and then mail it to you.

4         THE COURT:  No, I think -- I mean my problem is that

5  I can't assume that Mr. Wirtz is also going to lie to me.  I

6  mean he's an officer of the court.

7         MR. GWYNNE:  I understand that, but I'm saying it's -

8  - to me when I read that transcript it was clear that the only

9  person he was representing was himself and that --

10        THE COURT:  Well, you knew a lot more facts that I

11  did.

12        MR. GWYNNE:  Maybe true.

13        One of the things though that was troubling on

14  Page 42 is the Court said that it knows, it knows that this is

15  just about widgets and how much it will cost from Option One's

16  perspective.  And, unfortunately, Counsel didn't object to

17  that, of course, because it wasn't about his sanction.  But

18  Option One does object to that and also wants the Court to know

19  that they consider that inaccurate and unfair and they do care

20  about doing the right thing and --

21        THE COURT:  Good to hear.

22        MR. GWYNNE:  -- being right.

23        THE COURT:  Good to hear.

24        MR. GWYNNE:  Now, that doesn't mean they don't defend

25  against sanctions, but like everybody, Your Honor, there are --

1    I've represented other lenders or similar parties.  Nobody

2    wants to go through this.  Everybody wants to do the right

3    thing to avoid this.  The fear is --

4            THE COURT:  Then let's try to figure out how to do

5    that.

6            MR. GWYNNE:  And I think we are trying to do that.

7    And I think the issue really, Your Honor, to cut to the chase

8    that it's really more a matter of whether that should happen

9    internally or externally.

10           THE COURT:  Unfortunately, I think the external

11   pressure is what's going to make it happen internally.  I'll

12   say it again.  I am concerned about the integrity of the

13   system.  I need to be assured that the proofs of claim, motions

14   for relief, and affidavits are accurate in the District.  I

15   need sufficient information to determine how to do that, how to

16   assure myself of that fact.  I agree with you, I don't want to

17   write your procedures, and I won't write your procedures.

18   However, that doesn't mean that I won't require certain actions

19   from your client in order to protect the integrity of the

20   system.

21           MR. GWYNNE:  And, Your Honor, with respect to the

22   order I mentioned earlier, it was the actual sanction order, it

23   seems that that has been expanded without the entry of an order

24   which makes it harder for us to know when we come to court --

25   like Your Honor said, we didn't have a witness on this, that,

1    or the other.  It makes it a lot harder to figure out what

2    we're trying to -- what the cause is.  We're trying to show

3    when we feel like there has --

4            THE COURT:  I can appreciate that.  It goes back to

5    obtaining the accounting of this particular debtor, that was

6    the start of this, this particular debtor, and then if there

7    were errors in their accounting which we've determined there

8    were, why did they occur, and how do I assure myself that those

9    problems don't occur in the future?

10           MR. GWYNNE:  Understood.  I think we know why.  I

11   think there's plenty evidence of that.  The question is --

12           THE COURT:  How do we fix it?

13           MR. GWYNNE:  And then, Your Honor, I'll just turn

14   briefly to the last issue, and I really appreciate your

15   indulgence of giving me the time, and that's the issue of from

16   our perspective when we say "the system," we feel like the

17   system is closing in around us including our own lawyer is how

18   Option One felt, because at the August 21 hearing in the

19   beginning of the transcript on Page 10, Lines 16 through Page

20   11, Line 2, Your Honor recognized what we think properly --

21   that an Order to Show Cause is between the Court and the

22   parties, whether it's Fidelity, Mr. Wirtz, or LSP, and that the

23   U.S. Trustee is not a party and the Court had reservations

24   about the Trustee taking it over.  But then later on Page 208,

25   Line 24 to 209, Line 2, the Court directed the Trustee not only

1    to conduct discovery, but to conduct discovery on the Court's

2    behalf.  So, now when Option One reads -- see, my clients read

3    these transcripts.  They are very concerned and want you to

4    know that.  But now they see, okay, we have our lawyer putting

5    us under the bus.  At the 8/21 hearing he asked one question to

6    the witness.  He didn't ask him anything about, well, did you

7    send me these payments?  He asked him one question and then

8    later tried to impeach him.

9           So, we feel like the lawyer is putting us under the

10   bus and now we see it seems like the Court is joining forces

11   with the Trustee or using the Trustee on its behalf to conduct

12   discovery.

13          THE COURT:  Okay, I think that -- I think as I

14   recall, I don't have the specific quotations in front of me on

15   that transcript.  I asked the Trustee what they had in mind;

16   what did they believe they had the authority to do and what

17   they were going to do.  And they expressed the same concern as

18   the Court as to what the function -- why the errors occurred

19   and whether or not the account was accurate.  And the systemic

20   issues that I am concerned about.

21          I know this has been an issue in other jurisdictions

22   as to whether or not the Trustee can conduct discovery in a

23   matter such as this one.  I know that other Bankruptcy Courts

24   and District Courts have held that they can.

25          MR. GWYNNE:  Where they didn't file a Petition for an

1  Order to Show Cause --

2         THE COURT:  No, no --

3         MR. GWYNNE:  -- where a court --

4         THE COURT:  No, no, wait, I'm just talking about the

5  issue of discovery.

6         MR. GWYNNE:  Okay, sorry.

7         THE COURT:  I stated to the Trustee, and we're

8  finally getting to this last piece, I stated to the Trustee if

9  I'm not mistaken that he needed to file an adversary, or a 2004

10  request, or some vehicle to formally enter into this proceeding

11  because the Order to Show Cause was between the two of us.

12         MR. GWYNNE:  That was in the beginning.

13         THE COURT:  Right.  I think that I'm correct in

14  stated that that has not happened.

15         MR. GWYNNE:  Correct.  And that I think by the end

16  what may have caused the issue for the Trustee to serve what

17  they served is on Page 269, Lines 4 to 7.  The Court said it

18  would allow the Trustee to define what it believes is relevant

19  and to take whatever depos it believes are necessary.

20         THE COURT:  Well, that was in the context of its 2004

21  and its adversary.  I mean I wasn't going to say to the

22  U.S. Trustee's Office, "Here's your cause of action.  This is

23  what I want you to file.  This is what you're going to do."

24  That was in the context that the U.S. Trustee's Office would

25  determine on its own behalf what it believed the controversy to

1  involve --

2        MR. GWYNNE:  And I think that --

3        THE COURT:  -- and the vehicle, and would take

4  discovery as it deemed appropriate.

5        MR. GWYNNE:  I'm glad to hear that then and would say

6  then the only language that would still cause some concern

7  where it said "on the Court's behalf," because that wasn't me

8  paraphrasing --

9        THE COURT:  Right.

10        MR. GWYNNE:  -- that was language Your Honor used.

11        THE COURT:  I did say that.  Sometimes you don't say

12  it as eloquently as you like.  In fact I hate reading

13  transcripts.  I never say anything as eloquently as I like when

14  I read transcripts.

15        The argument I believe at that point was that the

16  U.S. Trustee's Office had no standing and had no right to

17  conduct discovery under any form or fashion.  And my comment

18  back was that what I was hearing from the U.S. Trustee's Office

19  was that their concerns were very similar to my own and that if

20  frankly, they conducted discovery in the form of a 2004, or in

21  the context of an adversary proceeding, that information would

22  prove relevant to my Order to Show Cause.  And while I can

23  require you and your client's representatives to come into here

24  time and time again until I get the type of information I think

25  I need to make a decision, that's expensive, and it's frankly

1  not very efficient.

2       MR. GWYNNE:  Your Honor, you haven't dealt with the

3  U.S. Trustee clearly.  Not this one in particular, but I'm

4  saying I've dealt with the U.S. Trustee in this context in

5  several occasions --

6       THE COURT:  And you're going to argue --

7       MR. GWYNNE:  -- and they are every bit as

8  aggressive --

9       THE COURT:  -- with me that it's not efficient --

10      MR. GWYNNE:  -- and spending --

11      THE COURT:  Not aggressive.  I guess what I'm trying

12 to explain is rather than go through several rounds of hearings

13 where you bring in witnesses and that doesn't satisfy the

14 question that I have, as you pointed out the first round didn't

15 do it.  It raised a lot of questions in my mind.  You bring in

16 in good faith what you think is necessary to satisfy the second

17 round.  Maybe it works, maybe it doesn't.  If you went through

18 the discovery process, something I can't do, maybe all that

19 information could be dealt with in a more efficient and

20 organized fashion.

21      Now, I see you smiling.  Maybe not, but what I was

22 really asking for is that if the U.S. Trustee's Office was

23 going to be involved that they formally involve themselves and

24 then we could take up the issue on a Motion for 2004.  We could

25 take up the issue on an adversary as their discovery and we

1    could perhaps have an organized system for getting to the

2    crux of what needs to be determined.

3              I was being asked at that hearing to determine what

4    the scope of the discovery was going to be.  I couldn't do

5    that, because I don't know yet what witnesses are available,

6    what their different roles and responsibilities are, what

7    documents are available, and I wasn't about to do that off the

8    stand and off the cuff.  I can do it the long way which is I

9    say to you, "I have these questions that I need answered by

10   your client.  You bring those in."  And assuming that that

11   solves my concerns I move forward.  And, unfortunately, if they

12   say something on the stand that raises a different issue, it

13   might save, but I might have to look at you and say, "Okay, but

14   now I don't understand this."

15             That's a hard way to deal, and I appreciate that from

16   your perspective.  And I know it seems to your client and maybe

17   to you that this is a moving target, but, unfortunately, when I

18   have to take in information without discovery, you know without

19   the ability to say, you know, "Let's sit down and figure out

20   how this really worked," you know maybe you can do that through

21   a status conference, or a pre-trial conference, I do that, you

22   know, on occasion, I don't -- I can't anticipate what your

23   client is going to say.

24             MR. GWYNNE:  Okay.  Well, Your Honor, thank you for

25   your time.  And as I said, we would like the opportunity at the

1    end to chat amongst ourselves, but thank you very much.

2              THE COURT:  Certainly.

3              Mr. Cash, I know you've been very anxious at the end

4    of that table.

5              MR. CASH:  And very quite.

6              THE COURT:  Trying very hard.

7              MR. CASH:  I am sure that I am probably the most

8    defensive in here thus far, but what I heard the Court say

9    actually has changed my attitude and I would like to offer

10   something to the Court that we did in Philadelphia with

11   Judge Sigmund.  You said that at times you think that the Court

12   may be misunderstood.  I think we're the same way.

13             What I'd like to do, Your Honor, before -- and I

14   think at this point and what the Court just pointed out at the

15   end gave me some comfort, there is not at this point discovery

16   in an adversary or a 2004, it's just floating out there, which

17   I don't think is appropriate.  What we can --

18             THE COURT:  I will let the U.S. Trustee argue his

19   point.

20             MR. CASH:  Right.  But what we can do, Your Honor,

21   and what we did there is I think the New Track System, I think

22   what you're saying is exactly what Judge Sigmund said.  I don't

23   know if it's good.  I don't know if it's bad.  I don't know

24   what it is; I've never seen it.

25             What we literally did is built a demonstration that

1  you can do at the -- we basically brought into court brought

2  somebody there who can explain if you wanted to say, okay,

3  stop, right here who does what.  I would be happy to do that

4  same thing for this Court so that you could better understand

5  our system, because it may change, hopefully not expand, but it

6  may alter what you now say, okay, I've had all these questions

7  answered, but now I have these too, and it may alter the course

8  of what you want to see.  So, in lieu of doing what I would

9  call invasive discovery from the U.S. Trustee's Office at this

10  point in time, and again I don't think there's a basis for it

11  yet, if the Court would like, and I think the way we got into

12  this case initially is we kind of volunteered to be here --

13          THE COURT:  Aren't you happy?

14          MR. CASH:  Well, you know, one way or another, that's

15  okay.  But here we are and I think what we can do is show the

16  Court how the New Track System works, what the communication

17  system is, how the Boles Law Firm would communicate with

18  Option One through our system, what an issue is, because you

19  would hear say, well, they'd raise an issue, or they'd send an

20  intercom.  Well, everybody knows what that is --

21          THE COURT:  Except for me.

22          MR. CASH:  Exactly, who should know.  And so if that

23  would be helpful to the Court, I wanted to offer that, bring

24  somebody down and do exactly the same demonstration we did for

25  Judge Sigmund in Philadelphia.  And I think that might here --

1   you know sometimes it's the fear or apprehension of the

2   unknown more than the known.  We're not a servicer.  We

3   basically do administrative things --

4          THE COURT:  I know that.

5          MR. CASH:  -- but we're not a servicer.  But maybe

6   for -- I think we are unique.  I think we built a business

7   model that's different and the Court hasn't seen it before.

8   None of the courts have.  So, I can understand why there would

9   be questions.  So --

10         THE COURT:  Well, you also understand there are

11  questions, particularly when I have lawyers standing in front

12  of me saying, "I don't know anything about anything."

13         MR. CASH:  Absolutely I understand.  And I think we

14  discussed Mr. Wirtz enough, but I think Mr. Wirtz knew a lot

15  more than was shared with the Court.  But I think one of the

16  things that you may be able to see and that we maybe -- is how

17  he could have communicated and how he should have communicated.

18  So, I would --

19         THE COURT:  Let me ask you this, Mr. Cash.

20         MR. CASH:  Yes, ma'am?

21         THE COURT:  In your system, your company's system --

22         MR. CASH:  Yes, ma'am.

23         THE COURT:  -- can it produce a spreadsheet loan

24  history pre and post-petition on -- when I say "a spreadsheet,"

25  something like what I did in Jones with an Excel spreadsheet,

1  at the beginning of a bankruptcy case like when a work

2  station is opened.

3          MR. CASH:  Right.

4          THE COURT:  Can that be produced so that -- and this

5  would have to be determined -- someone has responsibility of

6  looking at that spreadsheet and saying, okay, we think at least

7  at the start this is what's due, this is why it's due, you know

8  the various charges that have accrued on this account, and then

9  that particular spreadsheet gets attached perhaps to the proof

10 of claim?

11         MR. CASH:  Here's -- and this is my understanding of

12 our system, so this is the best I can do because I'm not the

13 technical person.  Here's how I understand it would happen is

14 actually it would be Option One's information --

15         THE COURT:  Right.

16         MR. CASH:  -- that they would upload --

17         THE COURT:  Right.

18         MR. CASH:  -- into the system.

19         THE COURT:  But could your system then produce a

20 spreadsheet from that information?

21         MR. CASH:  No, that's not what I system does to do

22 spreadsheets.

23         THE COURT:  Can it be made to do that?

24         MR. CASH:  Now you're beyond my technology.  I don't

25 know from the technical expertise.  I can't tell you if it

1 would do that.  What could happen is that if there was -- if

2 we have all of the payments in, all of the payments out, all of

3 that would be uploaded, because Option One as the lender would

4 keep that.  It would be uploaded and would be available to the

5 lawyer on the other end who basically can then upload and

6 download.  We're a conduit.

7 　　　　　THE COURT:  But the way the format, as I appreciate

8 it, and I'm going to let you show it, but the way the format

9 comes on the screens it's very difficult as I appreciate it to

10 read a history.  You can read the amounts that are due as of a

11 particular date.  There's a screen that shows, you know,

12 amounts due.  But to actually see a history of transactions,

13 and again this is my assumption.  You're absolutely right, I

14 have not seen your actual screens, but that the screens for the

15 history are in a line format as opposed to a grid format, so it

16 becomes very difficult to see the entire transactional history

17 and to sort it.  And there are also difficulties as I

18 appreciate it in coding the different charges.  And different

19 lender use different codes.  But what I'm trying to figure out

20 is obviously you have a huge incentive if you will, financial

21 incentive to help individual lenders with their information so

22 that it becomes useful to both their counsel and themselves

23 when we're dealing with bankruptcies.  And what I'm trying to

24 figure out and this is what I want you to ask your IT people is

25 -- I think the answer is going to be yes, the answer is going

1   to be how long it takes and what has to be done -- is there a

2   way to take their system that's being uploaded, their

3   information and put it into an Excel spreadsheet type of format

4   so that anybody along the process whether it's Ms. Goebel, or

5   Ms. Kelly, or Clay Wirtz, can see a fairly simply spreadsheet

6   and can identify fairly quickly where problems may exist.

7          MR. CASH:  I'll find that out, Your Honor.

8          What happened, just to give the Court a little

9   background in the Philadelphia case, is the lawyer -- the Court

10  had requested a payment history.

11         THE COURT:  Which is what I usually do which is what

12  I did on May 9th.

13         MR. CASH:  The lawyer requested it through the New

14  Track System.

15         THE COURT:  Oh, the lawyer as opposed -- you said the

16  court requested it.

17         MR. CASH:  The court requested it of the lawyer.  The

18  lawyer then requested it of the lender.  And we have back and

19  forth there is information that says that.  The lender got it,

20  sent it back, and it shows that.  And so the lender can upload

21  the payment history and it can go and I would imagine in

22  whatever system.

23         THE COURT:  From what I understand many of the

24  lenders have to do it manually.

25         MR. CASH:  And that may be.  And I don't know that

1   one of the services we provide or one of the components that

2   we have in our system, I don't know would actually -- because

3   what we don't do is really convert information.  Contrary to

4   what some of the testimony may have been, it's not like we get

5   it, we change it all, and then we send it.  It's basically we

6   are more of a conduit, which is why I would like to demonstrate

7   the system to you so you can see it.

8              THE COURT:  Well, but my problem is that this is --

9   how do I say this delicately?  This is a major problem.  This

10  is a major problem, because when courts, trustees, and counsel

11  or debtor's counsel are just trying to verify or have questions

12  about arrearage amounts, cure amounts, adequate protection

13  amounts, proof of claim amounts, the information is being

14  presented in a format that makes it extremely difficult and

15  time consuming to zero in on what the question may really need

16  to be.  You start off with this big number and you don't really

17  know what the problem could be.  Secondly, the counsel for the

18  lenders don't see very adept at figuring it out.  Sorry, I'm

19  just going to be honest about it.  And it's only when a Court

20  gets to you people, you know a more national level, that you

21  start to really get the information.

22             Now, this is highly inefficient and very expensive.

23  And so you know what I'm looking for is a way to get a readable

24  spreadsheet loan history, because I think it will do many

25  things.  It will identify any issues for the lender.  It will

1  identify issues for debtor's counsel, and trustee.  It will

2  save tremendous time I believe in discovery and in litigation,

3  because the parties can zero in.  And when I say "parties," all

4  parties can zero in on what may be questionable or what they

5  need information upon instead of having to do these broad-based

6  qualified written requests because they don't know where the

7  problems may be.

8         MR. CASH:  The problem is for example in this case,

9  Your Honor, --

10        THE COURT:  Now your client is getting very nervous.

11        MR. CASH:  That's actually (indiscernible) --

12        Just one second.

13        Let me tell you what the problem would have been for

14  example in this case, Your Honor.  If we would go to

15  Option One's list of things based on all their --

16        THE COURT:  Oh, I understand that this involved a

17  case where the payments weren't on.  That's a different issue.

18        MR. CASH:  Right, okay.

19        THE COURT:  But there was also an issue of the

20  application of some payments that came into the system.

21        MR. CASH:  The one post-petition pre-petition.

22        THE COURT:  Right.  So, there's two issues in this

23  case.  One is that what do we deal with these payments that

24  aren't on the system at all?  That's one issue.  The second is

25  when the system itself is incorrect -- forgive me, it happens a

1  lot -- I'm not saying --

2          MR. CASH:  It's not ours.  I know.

3          THE COURT:  -- but how do we determine that in an

4  efficient manner so that it can be caught quickly and early and

5  the proper parties if necessary bring objection.  I don't want

6  to be policing this, truth be known.  I would be much happier

7  if the information coming into the Court was generally accurate

8  and reliable.  And if counsel had a problem they could say,

9  "Why is the escrow account five times what it should be," for

10 example?

11         MR. CASH:  And if there was no us, if it was just the

12 attorney would have -- would basically call the client and say,

13 "Put this together" --

14         THE COURT:  Right, the old days.

15         MR. CASH:  -- what I understand is if we could

16 basically have a uniform format at least for people who use

17 Fidelity, if on Fidelity cases you would every time see this

18 Excel type spreadsheet that would come in --

19         THE COURT:  Bingo.

20         MR. CASH:  -- that's what you're looking for.  Let me

21 find out the answer to that, because that would, frankly,

22 probably from our client's perspective be an enhanced and added

23 benefit to both the attorneys in our network and the lenders in

24 our network, as well as the courts.  So, let me ask that

25 question.  I mean that's all I can do.  I don't know the

1   answer.

2          THE COURT:  Now, I know the Chapter 13 Trustee are

3   working on their best practices, you know, procedures and I

4   assume that Fidelity is watching that and following that.  I

5   would assume -- well, what I understand they're working on is

6   that when the trustees make payment that there be a uniform

7   coding system for those payments so that if it's for principal

8   or interest or some charge it's coded the same by every

9   Chapter 13 Trustee --

10         MR. CASH:  Right.

11         THE COURT:  -- and then it goes into the servicer

12  systems, many of whom use Fidelity, the same way.  I would

13  think that's basically what I'm asking.  I asking that the

14  coding coming from the lenders into the Fidelity either be

15  uniform or that there be, you know, a software interface that

16  picks up the lender's coding and then sorts it into --

17         MR. CASH:  A translator basically.  If they call it a

18  "D29" for all of us, we have a translator for each one that

19  would make it the same.  I'll find that out.  I'll find that

20  out.  And other than kind of an Excel spreadsheet if there were

21  some format -- I guess since we're discussing this if there's

22  some format that the Court envisions of what you would like it

23  to look like, if I'm going to go ask --

24         THE COURT:  Well, I have one on the Jones opinion

25  that's an exhibit to the Jones.  It's my own --

1          MR. CASH:  Okay.

2          THE CLERK:  -- it's just an Excel spreadsheet with

3   columns.  And it's an old-fashioned rolling history of the

4   loan.

5          MR. CASH:  All right.

6          THE COURT:  The payment comes in.  It gets applied to

7   columns.  There's an ending balance.  It rolls through.

8   Interest is accrued on the existing principal balance that

9   exists on the end.  Now, there's a different spreadsheet that

10  you use for the Chapter 13 Trustees because there's not the

11  accrual of interest on their numbers typically.  It's just a

12  flat number and it's an amortization of that number.

13         If you're familiar with the Jones decision what

14  really came up on that was that there -- when a Bankruptcy Work

15  Station would be opened there would almost have to be an

16  administrative and internal severance of the debt.  The pre-

17  petition arrearage gets handled on really a straight line

18  amortization that's, frankly, very simple.  That's what the

19  best practices system of the Trustees are.  The second part is

20  the principal balance as if it were completely current moving

21  forward.  And so what I'm really asking is when you file your

22  proof of claim or when you file -- is that how you got to that

23  accrual, just going on the Trustee's system that number --

24         MR. CASH:  Right.

25         THE COURT:  -- be put onto a spreadsheet similar to

1   the Jones so that someone can look at that history and say I

2   agree with this accrual number, or I have an issue with it.

3       It also helps because when there's a Motion for

4   Relief you say, "We started here and now I've made these

5   payments.  Why am I getting a Motion for Relief?  There must

6   have been a misapplication of a payment."  A lot simpler to

7   then pick up the phone and call counsel for the lender and say,

8   my client's got three cancelled checks, or three money orders.

9   You're calling me about a Motion for Relief or you filed a

10  Motion for Relief.  Something's not right.  Then counsel can

11  pull up a spreadsheet and see, oh, there's a discrepancy.  Let

12  me just stop everything and figure this out.

13      MR. CASH:  Understood.  Understood.

14      Your Honor, to the extent you want to discuss the

15  jurisdiction and whether at this point given the vehicle there

16  is jurisdiction, that's much more Mr. Epstein than me.

17      THE COURT:  All right, well let me hear from

18  Mr. Epstein.

19      MR. EPSTEIN:  Your Honor, I want to pick up on some

20  of what Mr. Cash was offering up and saying because I think

21  there's somewhat of a tension here between, you know, the scope

22  of what you're seeking to do in terms of protecting the

23  integrity of the system and whether we really have a pending

24  case or controversy.  I want to go back to kind of the last

25  part of what was being discussed and that is trying to find

1   best practices and go to a spreadsheet similar to what you

2   did in the <u>Jones</u> decision.  And I think the way I've seen it

3   handled and the discussions that are underway across the

4   country is that I think there is a sincere effort in the

5   default mortgage industry to try to work with the Trustees and

6   come up with these best practices.  And I think you saw me

7   nodding my head about the lenders, you know, having to create

8   these spreadsheets that you're referring to by hand.  And I've,

9   you know, seen that time and again where you know I've defended

10   a mortgage lender for, you know, having to --

11           THE COURT:  It seems like a colossal waste of time,

12   doesn't it?

13           MR. EPSTEIN:  Right.  And I think what I have seen,

14   at least in my jurisdiction in the Southern District of Texas,

15   we had a local rule that was put in place by Judge Isgur who

16   loves spreadsheets like yourself.

17           THE COURT:  I'm very familiar with it.

18           MR. EPSTEIN:  And Judge Bohm.  And essentially the

19   local rule there requires on a Motion for Relief that you

20   essentially include the payment history.

21           THE COURT:  Right.

22           MR. EPSTEIN:  And I think what the Court is trying to

23   accomplish --

24           THE COURT:  Because they're very concerned about

25   whether or not it's accurate.

1          MR. EPSTEIN:  Correct.

2          THE COURT:  To be honest, I'm aware of their local

3    rule.  I'd rather see it on the proof of claim if you want to

4    see it.

5          MR. EPSTEIN:  That's right.  And so I think that's

6    the only difference.  I mean that more or less is a timing

7    issue and I think, you know, over the last several years I

8    think we have made changes in the Southern District --

9          THE COURT:  Right, but here's --

10          MR. EPSTEIN:  -- and elsewhere in how proofs of claim

11    get filed.

12          THE COURT:  But, Mr. Epstein, here's my -- you know

13    because of my rulings I assume in Jones, Stewart, Fitch, and

14    what is pending before the Federal Bankruptcy Committee on the

15    Federal Rules is that the judiciary is trying to codify some of

16    this.  And to some extent Wells Fargo started out in front of

17    me trying to come up with procedures that might work as a test,

18    you know, in this District.  It was one of the first times that

19    the lender was asking for it.  Now, they've changed their mind

20    afterwards, but that's another story.  And I guess what I did

21    in Jones is knowing full well that my jurisdiction does not

22    extend to the Southern District of Texas, or to Michigan, or to

23    Massachusetts, or to any other place, was try to develop what I

24    thought was a sensible approach and a cost effective approach

25    to insure the integrity of the system in the District.  And

1   there's been a lot of talk about sanctions and what are we

2   really doing here.  And I've tried to explain as clearly as I

3   could that I'm trying to protect the integrity of the system

4   and I'm looking for information that would enable me to issue

5   rulings to insure that system.

6        As you probably know I'm a very creative judge in the

7   sense that it's not always about money.  In fact I said in

8   Jones it's rarely about money.  It's about trying to make sure

9   that the information is accurate.

10        My comments to Mr. Cash were designed to elicit some

11  thought about what could happen that might be beneficial both

12  to the clients as well as to the system.  You know I'm not

13  going to order that he change his software package.  I'm not

14  going to order that Option One change their software package.

15  But what you may find is that I order certain information be

16  presented in this District.

17        MR. EPSTEIN:  Right.  And I think that, Your Honor,

18  is more of a function of how this District constructs its rules

19  and how this District, you know, ties in with the best

20  practices that are going on around the country.

21        I think where we are in a procedural posture in this

22  case is we're somewhat in a no man's land in that the

23  underlying case in controversy has more or less passed.

24        THE COURT:  This is an Order to Show Cause based on

25  the Court's inherent authority to deal with the abuses that it

1   sees.  And I hear your arguments about case in controversy,

2   but to be honest that is not the way I see it or I wouldn't be

3   conducting these hearings.  The issue is the integrity of this

4   system.  I do not believe that it is, at least at this stage,

5   it's been shown that it's being properly protected.  That's not

6   to say that I won't conclude that after I hear more, but at

7   this point in time I am sufficiently concerned about the

8   operations of the lender and I guess its computer systems.

9           And, Mr. Cash, forgive me, that's just what gets

10  adopted, because it's the lenders programs that are being

11  utilized -- Mr. Cash, you're client's programs that are being

12  utilized -- and whether or not this produces accurate

13  information for the Court to make determinations upon and

14  whether or not there are sufficient policies and safeguards in

15  place to avoid significant problems such as occurred in this

16  particular instance.

17          MR. EPSTEIN:  And where I think the tension arises,

18  Your Honor, is just -- getting back to procedural no man's

19  land, I think with all due respect what you're trying to

20  accomplish is not properly, you know, done through this system

21  that you're -- where there's no party opponent.  There's no

22  case in controversy here because the --

23          THE COURT:  All right, you made the argument.  I

24  disagree.

25          MR. EPSTEIN:  And this isn't, frankly, a contested

1  proceeding.  I mean I think the Court recognized that, you

2  know, on your direction at the August 21st hearing you said,

3  okay, file an adversary proceeding or --

4          THE COURT:  That was to the U.S. Trustee for them to

5  formally enter.

6          MR. EPSTEIN:  Right, right.

7          THE COURT:  The Order to Show Cause is mine and I am

8  entitled to conduct hearings and elicit evidence to get to a

9  solution on what I see as a problem.  I don't know that a lot

10 more argument is going to change my mind on that, Mr. Epstein.

11         MR. EPSTEIN:  Right.  And I'm not sure that I'm going

12 to be able to change you mind, but I'm going to try.  What I

13 think Mr. Cash and I are prepared to do and what we've offered

14 up is, you know, getting back to the efficiency that you're

15 seeking and how the discovery process may or may not go

16 forward.  We think that it's appropriate to, you know, to maybe

17 get beyond, you know, the procedural no man's land that we find

18 ourselves in to, you know, show you the demonstrations that we

19 are proposing to do.

20         THE COURT:  I don't think you're in procedural no

21 man's land.  I disagree with that.  But, and I know you want to

22 speak among yourselves about how you want to proceed with this,

23 I've explained this for as many hours as I can as to what I'm

24 looking for.  There can be conversations in status conferences,

25 pretrial conferences.  There can be formal evidence taken.

1   There can be multiple hearings.  I have given you what I

2   need, or what information I'm seeking; that's where we are.

3           MR. CASH:  Your Honor, my only point, and I don't

4   disagree -- I understand what the Court is saying.  I guess for

5   a much narrower view today I don't think procedurally where we

6   are, and I understand where the Court's at, that the

7   U.S. Trustee is in a position to propound discovery --

8           THE COURT:  Okay, well this is next step.  The

9   U.S. Trustee has not gotten a chance to say a word yet.

10          MR. CASH:  I understand, but I think I wanted to make

11  that point that --

12          THE COURT:  So before we make that decision, do you

13  think we ought to at least let him talk?

14          MR. CASH:  I wasn't going to have you decide it, I

15  was just going our argument, and I figured he would respond to

16  it.  But I just don't think we're in a procedural posture,

17  because the only thing and the order literally said, I am

18  telling the Trustee on my behalf to conduct discovery, I think

19  that's clearly inappropriate.  So, I think that the Trustee at

20  this point, and I understand the Court can make inquiries, but

21  I don't think the U.S. Trustee can serve discovery where there

22  is no underlying case or controversy from their perspective.

23          THE COURT:  I get that.  I get that's the argument.

24  So, let's hear from the U.S. Trustee, last but not least.

25          MR. JACOBS:  And, Your Honor --

1          THE COURT:  Oh, I'm sorry, we have another person?

2          MR. CASH:  I was going to do just one last quote,

3    Your Honor, just because I wanted to put it in the record.  As

4    this Court is aware, basically Section 105, the Court's

5    authorities do not constitute the Court being able to be a

6    roving commission to do equity --

7          THE COURT:  How many times have I had that quoted to

8    me?

9          MR. CASH:  I would imagine, Your Honor, with all due

10   respect, several, but I think that that is -- the reason is

11   that's what we're doing here.

12         THE COURT:  All right, let's go on.

13         MR. EDWARDS:  Good morning, Your Honor; Jacob Edwards

14   for the Boles Law Firm.  I haven't had the pleasure of being in

15   your Court yet, but --

16         THE COURT:  Welcome.

17         MR. EDWARDS:  -- maybe in the future.  Thank you.

18         Basically our argument, the Boles Law Firm is not a

19   party to any show cause as it was issued by the Court.  I think

20   it was Option One, Fidelity now LPS, and Clay Wirtz, who I

21   might point out is no longer with the firm as of a couple of

22   days after that August 21st hearing.

23         THE COURT:  So, you're saying it's an oversight on my

24   part because Mr. Wirtz was a member of the firm and since he's

25   left a few days after I needed to amend to add you as a member?

1       MR. EDWARDS:  No, ma'am, I'm not saying that.  I'm

2   just procedurally pointing that out.

3       THE COURT:  Okay, well, I mean that's a valid point,

4   okay.  I'm hearing a lot about the information that your firm

5   knew, should have known, actions they should have taken and did

6   not.  I don't know what the parties at this table have to say

7   about it, but I suspect they would want you to be here so that

8   they could say, "See our system does do this.  They lawyers

9   just didn't utilize the system properly."  That's part of the

10  reason for this is to determine if the system has all the

11  information and the law firm didn't utilize the system

12  properly, or whether the system doesn't have the information.

13  So, from that perspective that's why Mr. Wirtz was part of

14  this.

15      MR. EDWARDS:  Right.  And I understand his actions

16  are imputed to our law firm --

17      THE COURT:  Yes.

18      MR. EDWARDS:  -- and we take responsibility for that

19  to the extent that we -- to put it frankly, Your Honor,

20  Mr. Wirtz -- and I hate to say this, but it was basically just

21  incompetent at the law firm.  And decisions were made after a

22  long -- not just as a result of this case here, but just over a

23  series of events it finally culminated in his termination.  And

24  The Boles Law Firm has done -- taken action to correct it and

25  to move on and move forward.

1    We don't contest the subpoena power of the Court or

2    the U.S. Trustee because Rule 45 clearly that's a non-party can

3    be served with a subpoena.  But we go back to the

4    jurisdictional argument raised by Mr. Epstein that obviously

5    you disagree with that there's no underlying case or

6    controversy that this subpoena can be issued through, and

7    basically just echoing the arguments of Mr. Epstein.  We don't

8    feel that the Court, with all due respect, does not have

9    jurisdiction here, because the plan of the debtor has been

10   confirmed.  The Motions for Relief from Stay have been denied,

11   one by written motion, one by a memo in the record and on the

12   transcript of the August 21st hearing.  And cases interpreting

13   28 USC 1334(a) and (b) require that at the very least in a

14   proceeding or anything that the Court directs be related to a

15   bankruptcy case under Title 11.  The courts have interpreted

16   related to meaning related to a bankruptcy and if the outcome

17   of that proceeding could conceivably have any effect on the

18   estate being administered in bankruptcy.

19        Your Honor, the plan is confirmed.  As far as I know

20   the debtors are current.  The Motions for Relief from Stay have

21   been denied.  This discovery by the Court we feel is not going

22   to forward this debtor's case in any way at this time.  It may

23   in the future.  I understand the Court's concern about

24   improving the system, making sure it's running efficiently, but

25   just at this time this discovery in this case the way it's set

1    up we just don't feel it's procedurally proper and the

2    underlying jurisdiction is not available to the Court.

3            THE COURT:  Okay.

4            MR. EDWARDS:  Thank you, Your Honor.

5            THE COURT:  Thank you.

6            MR. HAYNES:  Good morning, Your Honor.  I'm Sean

7    Haynes for the United States Trustee for Region 8 -- Region 5,

8    pardon.

9            Your Honor, one point I want to hit on with respect

10   to what the other attorneys were saying before I get into the

11   legal argument that I'm making is what is being represented to

12   the Court or offered to the Court that, well, we've got a

13   procedural problem here with this formal discovery.  And if it

14   were in the form of a Rule 2004 motion, if that's what it had

15   come on, well, then the procedural problem would have been

16   fixed and we're ready to go produce documents --

17           MR. CASH:  I'm sorry, Your Honor, I don't mean to

18   interrupt, but no, no, we have never said that.  We'd have to

19   go through all the hoops --

20           THE COURT:  I was going to say -- Mr. Cash, no, I

21   think what they're saying is that would just set up the process

22   for a Motion to Quash, which is what we have here based on why

23   the 2004 is inappropriate in their view.

24           MR. HAYNES:  And I think it's important to clear that

25   up because I'm confident that if once scenario would be that

1 the Court grants the motions today, and we file Rule 2004

2 motions, we'd be right back before the Court.  That's one

3 scenario.

4    THE COURT:  I suspect that's true.

5    MR. HAYNES:  Right.

6    THE COURT:  In fact I'm willing to agree and I think

7 everybody would stipulate to that effect that's in the room.

8    I guess the question would be why not an adversary

9 proceeding where you set forth what you believe to be the

10 problems and then they have to answer and then you get into

11 discovery, because if you can state a cause of action under the

12 U.S. Trustee, then we really get to the meat of why the

13 U.S. Trustee's Office believes that this is appropriate?

14    MR. HAYNES:  Two reasons.  First, Your Honor, is

15 because these discovery rules are available to us here and now

16 and that's what my client has elected to go with, and I will

17 get into that.  Secondly, Your Honor, if we're going to file an

18 adversary proceeding we're going to have to have -- we're going

19 to have to allege specific facts and a remedy that we're

20 seeking.  And we're not at that point, Your Honor; we're in the

21 investigative stage of this and we submit that this --

22    THE COURT:  So that's why it would be the 2004 that

23 would be the discovery.

24    MR. HAYNES:  Well, I believe a 2004 exam would be

25 available to us.  But again my client has elected to go with

1   formal discovery and I'm at the end of the day of course

2   going to ask that the Court deny these motions and allow us to

3   do that.

4          The other concern I have is, and I'll ask Mr. Cash if

5   I may if you're referring to the Taylor case in Philadelphia?

6          MR. CASH:  I am referring to the Taylor case.

7          MR. HAYNES:  All right, the concern I would have -- I

8   actually went on line myself and pulled up that order is.  If

9   I'm recalling correctly that's a pretty restrictive order as to

10  who with the United States Trustee's Program is going to have

11  access to that.  That would be a major concern that if, well,

12  Judge, we'll show this to you, but it can't be discussed

13  internally within the U.S. Trustee Program.  There's only an

14  attorney and the United States Trustee himself.  It can't be

15  discussed with other components of the Department of Justice.

16  If there were any kind of limitation like that, and again I

17  would say the safest thing to do would be to get a copy of that

18  Taylor order and I could -- I didn't realize we were going to

19  get into --

20         THE COURT:  Is this is the order that requires an

21  audit of certain accounts?

22         MR. CASH:  No, Your Honor.  And we're way premature

23  to talk about the protective order, because I'm not offering to

24  give any documents, which is what happened in Taylor.  What I'm

25  offering to do is to show the Court a demonstration.  That's

1    where I was at.  In that case, and I can't get into it

2    because there's a protective order, all I can say is there were

3    documents produced and Judge Sigmund entered an order that said

4    the U.S. Trustee can use it for the purposes of this hearing.

5    It cannot be used outside this hearing.  It cannot be shared

6    within the U.S. Trustee's Office.  Because the argument was if

7    one judge in bankruptcy says, no, you can't get that from

8    Fidelity, the U.S. Trustee shouldn't be able to do an end run

9    and say we'll file something else and we'll get it there and

10   then we'll just spread it around.  And so there's a restrictive

11   order in that case.  And we are not here to argue --

12           THE COURT:  What was the reason for the restriction?

13   Was it propriety software information or what was the need for

14   the --

15           MR. CASH:  Well, again, Your Honor, part of it was

16   because it was propriety, part of it was because, frankly,

17   fundamental unfairness in end running other courts and letting

18   there be discovery.  It was relevant to that case and that case

19   only.  There was a production made in that case and that case

20   only and to share it beyond that the Court simply said --

21           THE COURT:  But I thought it was just your system?

22   It was more than just your system?

23           MR. CASH:  No, in that case, no, Your Honor.  In that

24   case there were notes from the case.  There were specific --

25           THE COURT:  Oh, okay.

1    MR. CASH:  -- it went well beyond.  It wasn't just

2  -- and here I wouldn't ask for that kind of order to show you

3  the demonstration that we showed there.  That wasn't subject to

4  the order up there either the showing of the demo.

5    THE COURT:  Okay.

6    MR. CASH:  So just for clarification.

7    THE COURT:  Okay.

8    MR. CASH:  And again, Your Honor, we will want

9  documents in this case.  So, again that's a concern if we go

10  there.  And again I would defer to the precise terms of that

11  order as to the concerns that are there.

12    So, Your Honor, I want to just go back and just touch

13  on again I know at the beginning of the August 26th hearing --

14  August 21st hearing we were talking about how the Court

15  ordinarily would expect the matter to be brought by the

16  United States Trustee.  And, Your Honor, I'll flip back to the

17  transcript and I think I used the word "idea" or "ideally."

18  And then there was a reference at the end and I think beginning

19  on Page 271 or 272 and I think it's attributed to Mr. Cash, but

20  I think it was actually my comments that we intended to issue

21  formal discovery, that is interrogatories, and request for

22  production.  So, I think just the context of part of how we

23  arrived with formal discovery today.

24    Now, Your Honor, to go to my argument, the first

25  thing I do want to talk about is jurisdiction.  Your Honor,

1  Option One invoked this Court's jurisdiction when it filed

2  the Motion to Lift Stay.  In fact it alleges in the second

3  paragraph of that motion that the Court has jurisdiction under

4  Section 1334.  And that motion really invoked the Court's

5  jurisdiction in two ways, one because the motion itself, you

6  know, is a core proceeding, but as well under Section 1334(e)

7  it involves property of the estate.  They wanted to foreclose

8  on property of the estate.  So, this is intimately a core

9  proceeding that Option One commenced.

10         That motion was supported by an affidavit that was

11  signed by Ms. Goebel in her capacity as a representative of

12  Option One while employed by Fidelity.  It was submitted by The

13  Boles Law Firm through its attorney Clay Wirtz.  And this Court

14  made a finding that has not been appealed, that until today

15  there's not been a request to set aside the finding that it was

16  a false affidavit.

17         THE COURT:  I don't even think today they asked that

18  -- I think they pretty much admitted that it was false.

19         MR. HAYNES:  And so, Your Honor, the Court's then

20  May 9th, 2008 order commenced a collateral proceeding.

21  Directly the order itself refers to the stay relief hearing --

22  stay relief proceeding and says both the show cause matter and

23  the stay relief are going to be reset to June 26, 2008.  So,

24  there's no doubt the show cause is collateral to that.  That's

25  where in our papers we cite to the Cooter & Gell case that talk

1   about even when the underlying litigation has concluded the

2   court has jurisdiction.  That's the point.  The Court

3   unquestionably has jurisdiction to go forward with this show

4   cause proceeding.

5           Our argument, Your Honor, is that the show cause

6   proceedings themselves constitute a contested matter.  We have

7   cited, Your Honor, to the Count Liberty case.  We've cited to

8   Corella, Wikeman.  We also in response to I believe Option's

9   case -- their motion, we cited to the Branford case.  And in

10  Branford there the court said, ah, we have a debtor here who

11  has filed two Chapter 13 cases.  What are we going to do about

12  it, and raises the issue of dismissal under Section 1307.  And

13  it's not the trustee raising the issue.  It's not a creditor,

14  it's the court itself and the court refers to that as a

15  contested matter.

16          So, Your Honor, if this is a contested matter, then

17  the discovery rules -- the discovery tools, that is Rule 7026

18  through Rule 7037 are available to us.

19          THE COURT:  I think that's the crux of their issue is

20  if the Court initiates a contested matter in the form of an

21  Order to Show Cause, or Order for Sanctions, or to consider

22  sanctions, or to consider other relief, can a third party

23  intervene in that proceeding?  That's essentially what you're

24  doing is intervening in that particular proceeding, and conduct

25  discovery, or is it exclusively between the party who has been

1  noticed and the Court?

2      MR. HAYNES:  Your Honor, that's another point I

3  wanted to address is that we in our Notice of Appearance that

4  we filed on June 30th refer our appearance both respect to the

5  Relief from Stay proceedings and the Show Cause proceedings.

6  So, we have appeared on that purpose.

7      And, Your Honor, I guess I would just ask the Court

8  to consider the language of Rule 9014, particularly Rule

9  9014(a) with respect to the question the Court's asking.  As I

10  interpret (a), what that is doing is it's clarifying how a

11  contested matter may be brought, a permissive way for it to be

12  brought and that is by motion.  But if we look at that first

13  phrase, "In a contested matter in a case under the Code not

14  otherwise governed by these rules, relief shall be requested by

15  motion," it seems to contemplate that there are other contested

16  matters out there that are brought on by some other means than

17  a motion.  And I submit, Your Honor, that the show cause order

18  would fit in that category of other types of ways that a

19  contested matter can be begun.

20      And again I hear their argument today and again I

21  think it was made in Option One's papers that, well, hey, you

22  know, yes a show cause proceeding -- I think it's a concession

23  by Option One, yeah, a show cause proceeding is a contested

24  matter if it's initiated by one of the parties.  But if the

25  Court initiates it, then it's not.  And again, Your Honor, I

1  would submit that that exalts form over substance.

2  So, if a show cause proceeding is a contested matter,

3  then the discovery rules would be available, the formal

4  discovery rules would be available to the party that has

5  appeared and is participating in that matter.  It just seems to

6  follow, to flow like that.

7  THE COURT:  So what you're really arguing is that the

8  U.S. Trustee's Office is an interested party in connection with

9  a contested matter.  While you are not a party, you are an

10  interested party.  You are intervening because, as I appreciate

11  your filings, you are intervening because it is your obligation

12  and duty to supervise the administration of bankruptcy

13  proceedings.  And to the extent that the Court has identified

14  an issue which affects or may affect the administration of

15  bankruptcy proceedings, you are an interested party in that

16  Order to Show Cause.

17  MR. HAYNES:  Correct, Your Honor.  I wish we could

18  count the number of times today the word "process" has been

19  used.  And I think that's the question, how did this motion

20  that was inaccurate get filed?  What was the process?  And I

21  think if we looked at each of the discovery requests that the

22  United States Trustee promulgated or issued to these parties

23  and to Boles, those requests are going to be found to be

24  tightly connection to that question, to that process question.

25  So, definitely the United States Trustee is interested in how

1  that process worked that resulted in what the Court has found

2  to be a false affidavit being found.

3      Your Honor, if the Court wants me to address

4  standing, I don't think it's really be argued today, but you

5  know we would point to Section 307 as the statutory basis.

6      THE COURT:  Yeah, standing doesn't bother -- is not

7  as much of a concern as conceptually determining if an Order to

8  Show Cause allows the intervention of a third party.  That's a

9  different issue than standing.

10     MR. HAYNES:  One other thing that was mentioned was

11 whether there's a case or controversy.  And I would point the

12 Court back to the Wilde case and, you know --

13     THE COURT:  I know there's a vehement disagreement on

14 this side of the table as to case or controversy, but with due

15 respect I disagree.  I've researched this particular area

16 enough to feel comfortable that when the Court is altered to

17 sufficient facts that give it cause to question whether or not

18 there's been an abuse of a bankruptcy process that it can sua

19 sponte on its own motion investigate that process.  So, that

20 one is not in my opinion an issue that I think I will be

21 convinced on by these individuals.

22     MR. HAYNES:  And, Your Honor, in that Count Liberty

23 case there is reference, I believe I've cited the page in our

24 papers, to discovery being taken in connection with that show

25 cause proceeding.

1       THE COURT:  All right, then let me ask this,

2  Mr. Haynes.  If I were to request that the U.S. Trustee's

3  Office file a Rule 2004 motion in connection with this Order to

4  Show Cause, in that motion I would presume that the

5  U.S. Trustee's Office would set forth why it believes it has an

6  interest in the case, what the scope of the request of the 2004

7  examination is, and why it's tied to its concerns with regard

8  to the case, and it would then define for the parties, meaning

9  whoever the discovery is being propounded upon or requested of,

10 the right to determine if the scope was too broad, if the scope

11 was within the range of the issues that have been articulated

12 by the Court that are the scope of this Order to Show Cause, if

13 they believe it's unduly burdensome, or vague, or any issues

14 that they think may need resolution by the Court or maybe to

15 some extend guidance from the Court, or limitations by the

16 Court.

17      I think the problem with just propounding discovery

18 without that motion, I don't deny that you're going to see the

19 same thing all over again that you shouldn't be allowed to do

20 this, et cetera, but the problem is that they have expressed a

21 concern that they don't know where the U.S. Trustee's Office

22 discovery ends.  They don't know -- they want to know what

23 issues the U.S. Trustee's Office is seeking discovery upon,

24 what the scope of that discovery will be, and they're looking

25 to me to say define it.

1    MR. HAYNES:  Right.  And, Your Honor, this is what

2 I would say is they do have that safeguard with what we've

3 issued.  And I will say only Fidelity in the paper it filed

4 yesterday has really raised this issue as to, well, we reserve

5 the right to get into that issue.

6    THE COURT:  Right, I saw that.

7    MR. HAYNES:  And, Your Honor, what I would say is

8 that they can -- you know Rule 7026(c) provides that basis for

9 them to do that.  The fact that this didn't come on where they

10 can file an objection to a Motion for a Rule 2004 Exam is

11 really not an issue.  So, if the Court wanted, for example, to

12 deny the motions but grant them a further opportunity to plead

13 under Rule 7026, I mean that's the check that the Court has in

14 this case and every case on the scope of the discovery.  And

15 again none of them have up to this point said, well, look at

16 Request Number 12.  Look at --

17    THE COURT:  Right.

18    MR. HAYNES:  -- you know Interrogatory --

19    THE COURT:  Well, I haven't even read the discovery

20 request, I'll be honest.

21    MR. HAYNES:  Right.

22    THE COURT:  I don't know if I even have them

23 attached.

24    MR. HAYNES:  I believe they were attached,

25 Your Honor.

1           THE COURT:  Okay, I didn't go to that.  Right now

2    I'm dealing with the jurisdictional issue and with whether or

3    not you have the right to propound it in the first place.

4           MR. HAYNES:  Right.  One advantage that formal

5    discovery provides is interrogatories, is that we get to hear

6    the party state answers before we start taking depositions and

7    that is a certain advantage of formal discovery.

8           THE COURT:  Well, as I said, typically formal

9    discovery helps everyone become more efficient on what the real

10   issues are, because otherwise if you take a deposition without

11   formal -- well, if you don't take a deposition at all you're

12   doing it on the stand and we get unfortunately what happened at

13   one of the hearings where sometimes more questions are raised

14   than are answered.

15          MR. HAYNES:  Your Honor, the only other thing -- let

16   me see, I was just going through the other comments earlier --

17   is there were some statements made about what Mr. Wirtz knew --

18          THE COURT:  It's not into evidence.

19          MR. HAYNES:  -- and when it knew it, and the fairness

20   of the proceeding.  You know I would point out there's been no

21   proof in the record --

22          THE COURT:  I understand.

23          MR. HAYNES:  -- about --

24          THE COURT:  Well, that's what I said, his

25   representations are not testimony --

1          MR. HAYNES:  Right.

2          THE COURT:  -- and evidentially Mr. Wirtz -- there

3    are facts that either Option One or Mr. Wirtz knew that weren't

4    into evidence and it's not the Court's purview to determine if

5    the counsel is incompetent.  You know I assume counsel standing

6    in front of me is speaking the truth and is competent and,

7    frankly, I didn't have any reason to believe that what he was

8    saying to me was inaccurate.  And there was a procedural

9    mechanism for Option One and Fidelity and Ms. Goebel to ask for

10   reconsideration and to present additional facts.

11         MR. HAYNES:  Right.  Your Honor, and the only other

12   thing is based on Mr. Wirtz's Motion to Continue that was filed

13   he references a specific attorney in house with the client that

14   he's in communication with.  So, it would appears that, you

15   know, there was some level of communication.  Maybe that was

16   the only time that occurred, but --

17         THE COURT:  We don't know.

18         MR. HAYNES:  -- in any event.

19         THE COURT:  We don't know.

20         All right, you've asked for some time to talk

21   together?

22         MR. CASH:  Yes, Your Honor.

23         THE COURT:  All right, so the Court is going to take

24   a recess.  It is lunchtime, so why don't we recess for lunch.

25   You can discuss what you would like to discuss and then we'll

1  come back.  Is that acceptable?

2           MR. CASH:  I'm happy to do that, Your Honor.  I would

3  just say that if the Court wants to be rid of us more quickly I

4  don't think we're going to take very long.

5           THE COURT:  Oh, you want to be rid of the Court?

6           MR. CASH:  No, no, that's why I phrased it exactly as

7  I did.  If you wanted to be rid of us, I don't think we're

8  going to take very much time.  But if the Court would rather

9  have lunch, we'll come back.

10          MR. GWYNNE:  Yeah, I only thing we're talking about

11  two, three, four minutes --

12          THE COURT:  Oh, all right.

13          MR. GWYNNE:  -- and also I think it might be helpful

14  too if the parties are agreeable and the Court to have a brief

15  discussion off the record too.

16          THE COURT:  Okay.  Why don't y'all talk for a few

17  minutes and I'll come back in about five minutes.

18          MR. CASH:  Perfect.  Thank you, Your Honor.

19          THE COURT:  Court is in recess.

20        (Recess from 12:10 p.m., until 12:30 p.m.)

21          MR. GWYNNE:  Good afternoon, Your Honor, Kurt Gwynne

22  from Reed Smith on behalf of Option One.

23          As I mentioned earlier, I think it would be helpful

24  to have a discussion with the Court off the record.  We don't

25  have a resolution, but just so we can tell you what we're

1 | thinking, what we think is likely to happen going forward.

2 | But before that, I don't know if Your Honor was going to rule,

3 | but I would like the opportunity to just very briefly respond.

4 | I know I had a lot of time today, just a minute or two?

5 | THE COURT: A minute or two.

6 | MR. GWYNNE: Okay. Your Honor, first of all the

7 | U.S. Trustee has not filed a Motion to Intervene under Rule

8 | 2018. Entering an appearance isn't an intervention, otherwise

9 | anyone in the case could go participate in any contested matter

10 | and serve discovery and that's not the way it works. Not only

11 | do you have to be a party in interest, you have to be a party.

12 | Rule 34 and 33(a) says only a party can serve discovery.

13 | They're not.

14 | And I do think earlier I mentioned criminal contempt.

15 | One of the things that you have in criminal contempt is a

16 | special prosecutor with the court. I've never seen a case

17 | where -- I'm not saying I've seen every one, Your Honor. I

18 | don't plan on becoming an expert in Orders to Show Cause. But

19 | I've never seen one where the Trustee was serving discovery as

20 | if it were a party.

21 | That's all I wanted to say. Thank you,

22 | THE COURT: Okay. All right, the Court will take a

23 | short recess at the request of the parties to hold a status

24 | conference, pretrial conference.

25 | (Recess from 12:31 p.m., until 1:00 p.m.)

1          THE COURT:  All right, this is the continuation of

2     the hearing on the Motions to Quash filed in Ron and LaRhonda

3     Wilson, Case Number 07-11862.

4          The Court will take the matters under advisement.

5     After the conclusion of the conference between counsel, the

6     Court has encouraged all parties to these proceedings to

7     continue to talk to each other and try to devise a consensual

8     resolution of the motions.  The Court will schedule a

9     telephonic conference with the parties at a future date to

10    determine if they are close to resolution.  Failing resolution

11    the Court will rule.

12          Thank you all very much.  Court is adjourned.

13                    *    *    *    *    *

14                     (Hearing Concluded)

15

16

17

18

19

20

21

22

23

24

25

# C E R T I F I C A T E

       I certify that the foregoing is a correct transcript from the electronic sound recording of the proceeding in the above-entitled matter.


/S/Ann B. Schleismann             12/4/08
  ANN B. SCHLEISMANN              Date