UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE                                                           BANKRUPTCY NO.

**RON WILSON, SR.**                                             **07-11862**
**LARHONDA WILSON**

DEBTOR                                                          SECTION "A"
                                                                CHAPTER 13

**REASONS FOR ORDER DENYING MOTIONS TO QUASH DISCOVERY**

This matter came before the Court on Motions to Quash the United States Trustee's ("UST")

Discovery Requests filed by Fidelity National Information Services, Inc. ("Fidelity"), Option One

Mortgage Corporation ("Option One"), and The Boles Law Firm ("Boles").[1]

**<u>Jurisdiction</u>**

This Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2)(B), (G), (K), (O), 586; 11

U.S.C. §§ 307, 323; and Bankruptcy Rules 2004, 7033, 7034, and 9014.

**<u>Background</u>**

Debtors, Ron Wilson, Sr. and LaRhonda Wilson ("Debtors"), filed a voluntary petition under

Chapter 13 of Title 11 on September 29, 2007.  Option One holds a claim secured by Debtors'

residence.  Boles filed a Motion for Relief from Stay on behalf of Option One on January 7, 2008.

Debtors objected to the Motion, asserting that they were current.  The Motion was denied because

Option One failed to provide evidence of default.  Option One, through Boles, filed a second Motion

for Relief from Stay on March 10, 2008.  The second motion ("Second Motion") attached an

affidavit signed by Dory Gobel, Assistant Secretary, attesting to the nonpayment of four postpetition

---

[1] Fidelity, Option One and Boles will be collectively referred to as "Movants."

installments.    Again Debtors objected, asserting that all payments had been made.    Debtors supported their Objection by filing proof of payment into the record.

A hearing on the Second Motion was held on April 8, 2008.  Timothy Farrelly, local counsel for Option One, appeared at the hearing.  Based on Debtors' offer of proof, Mr. Farrelly requested a continuance to confirm Debtors' payments.  The Court continued the hearing until April 22, 2008, to allow Option One time to confirm the receipt of payment.

Immediately prior to April 22, 2008, hearing, Option One filed an accounting into the record showing receipt of three payments and reasserting that it was entitled to relief from the stay.  Mr. Farrelly appeared for Option One at the April 22 hearing, however, he did not have any knowledge beyond that already set forth in the pleadings.  The Court continued the matter to June 26, 2008, and issued Orders to Show Cause against Clay Wirtz, Option One counsel who filed both motions for relief; Dory Goebel, the affiant; and Option One.

At the June 26, 2008, hearing on the Second Motion and Orders to Show Cause, only Mr. Wirtz appeared.  Contrary to its two motions and affidavit of default, Wirtz admitted that Option One had received five payments postpetition.[2]  Mr. Wirtz further admitted that Option One had transmitted three Debtor payments to him during the course of his representation and that the payments were held in his files.  The exact dates of transmittal were unclear, except that Mr. Wirtz had become aware of at least one payment prior to the filing of the Second Motion and the remaining two after its filing but prior to the initial hearing.  Despite personal knowledge of these facts, he failed to amend or correct the allegations contained in the Second Motion or affidavit of default.

---

[2]An Option One representative later testified that a sixth payment, delivered on October 21, 2007, was misapplied to Debtors' prepetition arrearage.

He also failed to advise his local counsel of these facts.

The Court found that Mr. Wirtz had violated his ethical duty of candor to the Court and sanctioned him $1,000. It also jointly sanctioned Option One and Dory Goebel $5,000 for failing to appear and $5,000 for filing a false affidavit. Finally, the Court continued the hearing on the Orders to Show Cause, noting that the continuation was to explore the possibility of further sanctions. Based on the representations of Mr. Wirtz, the Court also issued an Order to Show Cause for Fidelity. The hearing on the Fidelity Order to Show Cause and all continued matters was scheduled for August 21, 2008.

On June 30, 2008, the UST entered an appearance in the case.

At the August 21 hearing, counsel appeared for Option One, Goebel, Fidelity, Boles, the UST, and Debtors; representatives of Fidelity and Option One were also present. The UST requested a continuance of the hearing so he could conduct discovery. The Court elected to take the testimony of Ms. Goebel and Arthur Simmons from Option One prior to ruling on the request.

Ms. Goebel testified that she is an assistant vice president at Fidelity. She also testified that it was her responsibility to sign affidavits of default supporting the allegations contained in motions for relief from the stay. She outlined the procedures she exercised prior to signing affidavits drafted by counsel. Her testimony indicated that it was the responsibility of Option One to notify her of any changes to a debtor's account that were not reflected on the computer system.

Arthur Simmons, a Legal Action Specialist III, testified for Option One. Mr. Simmons represented that once a borrower filed bankruptcy, Option One relied on Fidelity and its counsel for advice. In this case, Option One notified Fidelity that it had received postpetition payments and requested instruction. Fidelity transmitted this inquiry to Boles who directed Fidelity to forward the

payments to its office. It appeared from the testimony that Fidelity, Boles, and Option One were all aware of the existence of unapplied payments at the time the initial and Second Motion were filed. However, each subject maintained that it was another person's responsibility to verify the allegations contained in the affidavit. In addition, Fidelity asserted that although Goebel was a Fidelity officer and Fidelity had contracted to provide default affidavits for Option One, Goebel reviewed and signed the affidavit as the Assistant Secretary of Option One, not in her capacity as an employee of Fidelity. As a result, Fidelity asserted that it was not responsible for Ms. Goebel's actions.

Because the testimony was conflicting and relevant information was not supplied, the Court granted the UST's request to conduct additional discovery. Thereafter, discovery was propounded by the UST and the instant Motions to Quash were filed. Oral argument was heard on the Motions on November 21, 2008. The Court took the matter under advisement in order to allow the parties thirty days to discuss settlement. The Court was advised on December 29, 2008, that settlement was not possible and this ruling followed.   For the reasons set forth below, the Motions are denied.

**Discussion**

Movants raise three grounds for relief. They assert that: 1) the Court does not have jurisdiction to allow discovery;[3] 2) the UST does not have standing to propound discovery; and 3) the discovery requests are procedurally improper.

**Jurisdiction**. Movants argue that because the Court has already denied the Motions for Relief, no case or controversy exists and therefore the Court lacks jurisdiction to allow discovery.

_____

[3] Fidelity argues that the Court lacks jurisdiction over Fidelity because it is not a party to this case. Dory Goebel, who is an assistant vice president at Fidelity, signed the false affidavit that precipitated the orders to show cause. Based upon the testimony from the numerous hearings held in this matter, the Court is of the clear opinion that Fidelity's participation is warranted, proper, and that jurisdiction over it exists as a participant in the filing of the Motions.

The bankruptcy court's jurisdiction arises from 28 U.S.C. §§ 1334 and 157.[4]  Section 157(b)(1) provides that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under section (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title."  The core proceedings relevant to this case are set forth in section 157(b)(2):

> (A) matters concerning the administration of the estate; (G) motions to terminate, annul, or modify the automatic stay; (K) determinations of the validity, extent, or priority of liens; [and] (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship . . ..

The Court finds that this is a core bankruptcy matter under § 157(b)(2)(A), (G), (K), and (O). The issues arose in the context of two motions for relief from stay.  Option One, acting through its representatives and counsel, presented false information to the Court in both pleadings and an affidavit of default.  Although the Court denied the relief requested, it maintains jurisdiction to consider collateral matters that emanate from the Motions as well as the administration of the case. The Supreme Court has held "[i]t is well established that a federal court may consider collateral issues after an action is no longer pending."[5]  The dismissal of a matter does not divest a federal court of the right to award attorney's fees and other costs under Rule 9011 because the consideration of Rule 9011 sanctions is not a judgment on the merits of an action but a collateral issue.[6]  In

---

[4] *In re U.S. Brass Corp.*, 301 F.3d 296, 303 (5th Cir. 2002).

[5] *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395, 110 S.Ct. 2447, 2455 (1990); *see also Coward v. AC and S, Inc.*, 91 Fed.Appx. 919 (5th Cir. 2004)(unreported decision)(finding that, during appeal, district court retained jurisdiction over collateral issues, such as awarding attorney fees).

[6] *Id.*

addition, the Court has an interest in protecting the integrity of the judicial system against improper conduct.[7]

The sanctions issued on August 21, 2008, did not end the Court's inquiry into the facts that led to the filing of the unwarranted Motions for Relief.  The Court sanctioned Option One and Dory Goebel for failing to appear at the hearing on its Order to Show Cause and for filing a false affidavit. This Court specifically reserved the right to award further sanctions and continued the hearing on the Orders to Show Cause to a later date.  While the Court has issued sanctions for the aforementioned acts, the issue of sanctions is not closed.[8]  To hold otherwise would encourage a party expecting sanctions to simply ignore an order to show cause and accept sanctions for missing the hearing in lieu of the sanctionable conduct that precipitated the order to show cause.

**Standing**.  Movants argue that the UST does not have standing to request discovery because the UST is not a party to the Orders to Show Cause and the requested discovery exceeds the UST's duties, as set forth in 28 U.S.C. § 586.

In 1986, Congress created the Office of the United States Trustee for the purpose of "protecting the public interest and ensuring that bankruptcy cases are conducted according to law."[9] The role of the UST has been described to be that of a "watchdog," and "as executives of the

---

[7] *See, In re Stewart*, 2008 WL 5096011, at *10-12 (Bankr. E.D.La. 2008).

[8] It is not unusual for a court to consider additional sanctions after it has a greater understanding of the sanctionable conduct.  *See, e.g., In re Clardy*, 190 B.R. 552, 557 (Bankr. N.D.Miss. 1995), *In re Woodward*, 229 B.R. 468, 477-78 (Bankr. N.D.Okla. 1999), and *In re Ferguson*, 2006 WL 4108576, at *5 (Bankr. M.D.Fla. 2006).

[9] H.Rep. No. 595, 95th Cong. 88-99, 2d Sess. 109, *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5963, 6049-60.

bankruptcy network," Congress has "likened the U.S. trustee's relation to that of a prosecutor."[10]

The specific duties of the UST are set forth in 28 U.S.C. § 586(a),[11] however, 11 U.S.C. § 307 also

provides at a general grant of power:

> The United States trustee may raise and may appear and be heard on any issue in any
> case or proceeding under this title but may not file a plan pursuant to section 1121(c)
> of this title.

Movants argue that § 586(a) limits the broader grant of the UST's powers under § 307.  The UST

asserts that § 586(a) is a non-inclusive provision merely delineating the UST's specific duties.

Nearly every court considering this issue has determined that § 307 provides the UST with

very broad and wide reaching standing.[12]  The most comprehensive discussion of the issue can be

---

[10] *In re Revco D.S., Inc.*, 898 F.2d 498, 500 (6th Cir. 1990)(citations omitted).

[11] A partial list of the specific duties set forth in 28 U.S.C. § 586(a) are: "(1) establish, maintain, and supervise a panel of private trustees . . .; (2) serve as and perform the duties of a trustee in a case under title 11 when required to serve as a trustee in such case; (3) supervise the administration of cases and trustees in cases under chapter 7, 11, 12, 13, or 15 of title 11 . . . ."

[12] *See, In re Columbia Gas Systems Inc.*, 33 F.3d 294 (3rd Cir. 1994)(UST has standing to object to failure to comply with investment guidelines set forth under section 345); *In re Clark*, 927 F.2d 793 (4th Cir. 1991)(UST has standing to appeal denial of Motion to Dismiss);  *In re Plaza de Diego Shopping Center, Inc.*, 911 F.2d 820 (1st Cir. 1990)(UST has standing to appeal appointment of trustee); *In re Revco D.S., Inc.*, 898 F.2d 498 (6th Cir. 1990)(applying public interest test to find UST has standing to appeal court refusal to appoint examiner); *In re Hayes and Son Body Shop, Inc.*, 124 B.R. 66 (W.D.Tenn. 1990) *aff'd mem.*, 958 F.2d 371 (6th Cir. 1992)(UST has standing to object to fee applications); *In the Matter of PHM Credit Corp.*, 110 B.R. 284 (E.D.Mich. 1990)(UST had standing to appeal appointment of debtor's counsel); *In re LWD, Inc.,* 342 B.R. 514 (Bankr. W.D.Ky. 2006)(UST has standing to object to file adversary);  *In re Nieves*, 246 B.R. 866 (Bankr. E.D.Wis.2000)(UST has standing to object to chapter 7 debtors' counsel fees); *In re Speece*, 159 B.R. 314 (Bankr. E.D.Cal. 1993)(UST has standing to object to debtors' proposed settlement of the objection to their discharge); *In re St. George Island, Ltd.,* 137 B.R. 857 (Bankr. N.D.Fla. 1991)(UST has standing to object to election of Chapter 7 trustee); *but see In re Washington Mfg Co.*, 123 B.R. 272 (Bankr. M.D.Tenn. 1991)(UST did not have standing to intervene where Chapter 11 trustee could adequately represent UST interests); *In re Attorneys at Law and Debt Relief Agencies*, 353 B.R. 318 (S.D. Ga. 2006)(UST did not have standing to appeal miscellaneous order determining that attorneys were not debt relief agencies).

found in the opinion *In re Countrywide Home Loans, Inc.*[13]  In *Countrywide*, the UST filed a Notice of Examination under Fed.R.Bankr.P. 2004 and Service of Subpoena (*Duces Tecum*) in ten bankruptcies.  The UST targeted the cases because she believed Countrywide was not properly administering the debtors' loans.  Countrywide objected by filing a motion to quash.  The court, in a thorough and well reasoned opinion, determined that the UST had standing to seek and obtain a 2004 examination.  The court noted that "[t]he deliberately broad language of Section 307 ensures that the UST has the ability to act in areas where Congress did not specifically foresee and provide an explicit provision for the UST to do so."[14]

Similarly, in *In re Parsley*,[15] the UST propounded discovery after the court issued an order to show cause stemming from a motion for relief from stay that was supported by an incorrect payment history.  The parties objected to the UST's participation in the matter, including its requests for discovery and examination of witnesses.  The Court reasoned that the broad language of section 307, the legislative history, and case law make it clear that the UST has the right to appear and be heard on the issues raised by the order to show cause.[16]

The Court agrees with the UST and finds that provisions of §586(a) are intended to compliment the broader grant of power provided by § 307.[17]  This Court finds no reason to differ from the vast majority of courts on this issue and specifically adopts the reasoning found in *In re*

---

[13] 384 B.R. 373 (Bankr. W.D.Pa. 2008).

[14] *Id.* at 386.

[15] 384 B.R. 138 (Bankr. S.D.Tex. 2008).

[16] *Id.* at 146-47.

[17] *See, In re Countrywide*, 384 B.R. at 385;  *see also In re LWD, Inc.,* 342 B.R. 514 (Bankr. W.D. Ky. 2006).

*Countrywide Home Loans, Inc.*

**Procedure**.  Movants also argue that the UST's discovery is procedurally flawed because it does not arise in the context of a contested matter or adversary proceeding.  The UST's discovery requests are controlled by Part VII of the Bankruptcy Rules,[18] which govern adversary proceedings and contested matters.[19]  Movants assert that a *sua sponte* Order to Show Cause is not a contested matter and, therefore, the UST's discovery requests are not authorized by the Code.

The discovery procedures described in Part VII of the Bankruptcy Rules are not the exclusive means for obtaining discovery in a bankruptcy proceeding.  Bankruptcy Rule 2004 is a pre-litigation discovery device unique to bankruptcy proceedings.[20]  It allows for the discovery of evidence and examination of parties before an adversary proceeding has been initiated.  For example, a creditor may use a Rule 2004 examination to investigate the financial affairs of a debtor in order to discover estate assets and identify fraudulent conduct.[21]  Rule 2004 provides, in part:

> (a) Examination on Motion. On motion of any party in interest, the court may order the examination of any entity.
> (b) Scope of Examination.  The examination of an entity under this rule . . . may relate . . . to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge . . . and any other matter relevant to the case or to the formulation of a plan.

At the August 21, 2008, hearing the Court advised the UST that it may need to file a request for an examination pursuant to Fed.R.Bankr.P. 2004 to determine whether grounds exist for filing

---

[18] Bankruptcy Rule 7033 governs interrogatories and Rule 7034 governs production of documents.

[19] Bankruptcy Rule 9014 provides that certain sections of  Part VII of the Bankruptcy Rules also apply to contested matters.

[20] *See, e.g., In re Comdisco, Inc.,* 2006 WL 2375458 at *6 (N.D.Ill. 2006).

[21] *See, e.g., In re 2435 Plainfield Ave*, 223 B,R, 440 (Bankr. D.N.J. 1998).

an adversary proceeding.[22]  The Court finds that a Motion for Examination under Rule 2004 is the preferable method for the UST to obtain the information it seeks from the Movants.  The Court does not find that it lacks the authority to grant the UST's requests, however.

The purpose of a Rule 2004 request is to allow the parties affected an opportunity to challenge the need and scope of the proposed discovery.  Although the UST did not request permission to conduct discovery under Rule 2004, the Motions to Quash have allowed the parties affected to assert these arguments.  In addition, multiple hearings and conferences have been conducted on the subject.  To require the UST to file Motions for 2004 Examination at this stage would be duplicitive.  The Court finds that the propounded discovery requests are narrow in scope and tailored to elicit information regarding the actions and procedures of Option One, Fidelity, and Boles personnel in connection with this matter.  Under these circumstances, the Court will authorize the propounded discovery by utilizing its inherent authority under §105(a).

New Orleans, Louisiana, February 6, 2009.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge

---

[22] August 21, 2008 Trial Transcript at 11:12-16.