## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re: | CASE NO. 07-11862 |
| **RON WILSON,**<br>**LaRHONDA WILSON,** | Section "A" |
| | CHAPTER 13 |
| **Debtors.** | |

## UNITED STATES TRUSTEE'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ORDER COMPELLING PRODUCTION

TO THE HONORABLE ELIZABETH W. MAGNER:

The United States Trustee for Region 5 files this Memorandum of Law in support of his Motion for Order Compelling Production ("Motion"). In response to a subpoena duces tecum ("Subpoena") issued and served by the United States Trustee, The Boles Law Firm, PLLC ("Boles") produced some documents but also asserted general objections. Boles declined to produce other documents, asserting various privileges through a privilege log. The United States Trustee challenges the general objections and seeks production of the unproduced documents.

### Procedural History

On October 2, 2008, the United States Trustee served the Subpoena upon Boles, requiring production of documents. On November 3, 2008, Boles moved to quash the Subpoena. On February 6, 2009, the Court entered its Order ("Discovery Order") denying Boles' motion to quash. On February 17, 2009, Boles moved for a stay of enforcement of the Discovery Order. The Court denied Boles' request for stay by Order of March 26, 2009. Boles did not appeal the Discovery Order.

On May 22 and May 27, 2009, Boles responded to the Subpoena.  Boles produced

approximately 131 pages.  Boles also served its Responses to the United States Trustee's

Subpoena Duces Tecum ("Written Discovery Response"), **Exhibit 1** to the Motion.  Further,

Boles served its Privilege Log, **Exhibit 2** to the Motion, asserting the attorney-client privilege

with respect to 165 documents.

**The Disputes**

Boles has refused to produce i) an agreement between Boles and Fidelity National

Information Services, Inc., n/k/a Lender Processing Services, Inc. ("Fidelity"); ii) an invoice from

Fidelity to Boles; and iii) the 165 documents referenced on the Privilege Log.  The United States

Trustee asserts that Boles has improperly invoked privileges to withhold those documents.

Additionally, Boles sought to protect produced documents by asserting seventeen generalized

privileges and objections (the "General Objections") in its Written Discovery Response.  As

demonstrated herein, the Court should require production of the unproduced documents and

overrule the General Objections.[1]

## I.  The Boles/Fidelity Agreement

Subpoena Request No. 2 required Boles to: "Produce all agreements and amendments

thereto, executed between Fidelity and Boles, affecting the rights of Option, that concern the

Wilson Case."  Boles produced no documents in response to Request No. 2.  Boles stated, rather,

"There are no agreements or amendments thereto executed between Boles and Fidelity [ ], that

---

[1]    The United States Trustee reserves the right to assert additional objections to
Boles' response to the Subpoena depending upon information that may be revealed in the course
of the proceedings on this Motion.

affect the rights of Option and that concern the Wilson case."  Written Discovery Response re Request No. 2.

Boles tortures Subpoena Request No. 2 to improperly withhold one or more documents. Per an explanation given by Fidelity's counsel at the August 21, 2008 hearing, there is a written agreement between Boles and Fidelity (the "Boles/Fidelity Agreement"): "We do have a contractual relationship with Mr. Wirtz."  August 21, 2008 Transcript of hearing on Orders to Show Cause, 18:25 - 19:2 (hereinafter, "Aug. 21 Tr. __:__").  Attorneys are required to sign up on a network of attorneys to be able to use Fidelity's system. Aug. 21 Tr. 20:22 -24.  The attorneys pay Fidelity to use its system. *Id*.  Such contract is required if a law firm wishes to be able to represent Fidelity's clients, such as Option.  Aug. 21 Tr. 21:1-4.  The Boles law firm is a member of the Fidelity network of attorneys.  Aug. 21 Tr. 21:12-14.   Boles would be unable to access Option's information about the Wilson account, maintained by Fidelity, unless Boles signed the Boles/Fidelity agreement.  *See* Aug. 21 Tr. 21:1-4.

Boles paid Fidelity to access information it needed to prepare and file the motion for relief from stay that Boles filed on Option's behalf.  *See* Aug. 21 Tr. 24:7-11 (Court confirming that a distinct charge occurs "for filing a Motion for Relief from the Automatic Stay . . .").  Fidelity issued an invoice to Boles with respect to Boles' accessing the Fidelity system on behalf of Option with respect to the Wilson case.  *See* Written Discovery Response re Request No. 5 and Privilege Log, Line 4 (referencing "invoice").

Even though Boles paid Fidelity to access information, Boles was representing Option with respect to the motion it filed in the Wilson case.  *See* Aug. 21 Tr. 24:21-25 (network attorney "works for Option One" and "He's the attorney for Option One.") Indeed, there is no

3

separate written agreement between Boles and Option.  *See* Written Discovery Response re Request No. 1 ("There are no agreements . . . executed between Boles and Option One . . . that concern the Wilson Case).

Based on the foregoing, it is clear that there is an agreement between Boles and Fidelity and it was operative with respect to the Wilson case.  The Court should, consequently, order production of such agreement.

## II.  The Boles/Fidelity Invoice

Boles has failed to produce an invoice that it received from Fidelity.  Subpoena Request No. 5 required Boles to: "Produce all documents evidencing any payment by Boles to Fidelity concerning the Wilson Account.  Such documents should include but not be limited to invoices and canceled checks."  Boles produced no documents in response to Request No. 5.

With respect to Request No. 5, Boles' Written Discovery Response states:

> There is a document that is responsive to the Request No. 5; however, Fidelity has requested that this document not be produced except under protective order or seal.  To date a protective order has neither been agreed to nor entered.  Boles, therefore, reserves production of this document at this time.

Written Discovery Response re Request No. 5 (also asserting Boles' general objections).  Presumably, the "document" in question is an invoice, although not explicitly so described.  *See* Privilege Log, Line 4 (indicating that an "invoice" is responsive to Request No. 5).

Boles' failure to produce the document is without merit.  First, Boles itself is not raising any reason for non-production; rather, Boles asserts a third-party's "request."  That is not a proper basis for non-production.  *See U.S. v. Davis*, 636 F.2d 1028, 1039 (5th Cir. 1981)(subpoenaed attorneys, employed by investigated taxpayer, not permitted to assert Fifth

Amendment privilege "vicariously" with respect to tax documents of the taxpayer).  Second,

Boles asserts the necessity of producing the document only pursuant to a protective order, but

Boles has never moved for a protective order.  Until Boles applies for a protective order, it

should be required to produce the document.

In posing the General Objections with respect to Subpoena Request No. 5, Boles has

asserted the attorney-client privilege with respect to the invoice.  *See* Written Discovery

Response, General Objection 2.  Fidelity, though, the author of the document, was not Boles'

client.  In the absence of an attorney-client relationship between Fidelity and Boles, a claim of

attorney-client privilege is improper.  Because Fidelity was not Boles' client, any

communications (such as the invoice) between Fidelity and Boles are not subject to the attorney-

client privilege.  The Court should, therefore, compel production of the invoice.[2]

---

[2]    Even if the invoice had been from an attorney to a client, it is unlikely the invoice would be protected by the attorney-client privilege.  The Fifth Circuit's *Davis* opinion dealt with a claim of attorney-client privilege with respect to invoicing information from attorney to client. *Davis* held that, "Financial transactions between the attorney and client, including the compensation paid by or on behalf of the client . . . are not within the privilege except in special circumstances not present here."  *Id.*, 636 F.2d at 1044; see also *U.S. v. Naegele*, 468 F.Supp.2d 165, 171 (D.D.C 2007)("billing statements and retainer agreements usually are not privileged")(quoting *Chaudhry v. Gallerizzo*, 174 F.3d 394, 402 (4th Cir. 1999)(quoting *Clarke v. American Commerce National Bank*, 204 F.3d 516, 520 (4th Cir. 2000)).

### III.  The Privilege Log

Instructions accompanying the Subpoena afforded Boles the ability to respond via a

privilege log with respect to documents where assertion of the attorney-client privilege[3] or the

work-product doctrine would protect the disclosure:

> Do not produce any documents or things that are subject to the attorney-client privilege or the attorney work-product doctrine.  If any document requested herein is withheld under a claim of privilege, furnish a list describing each document for which privilege is claimed, together with the following information:
> 1. author;
> 2. name and job title of each recipient and person to whom a copy was furnished;
> 3. date of the document;
> 4. basis on which privilege is claimed
> 5. the paragraph of the Requests for Production to which each such document is responsive.

Subpoena Instruction E.

In responding to the Subpoena, Boles delivered to the United States Trustee the Privilege

Log.[4]  The Privilege Log references 165 documents that Boles has not produced due to a claim of

---

[3]    The United States Trustee does not aver the absence of an attorney-client relationship between Boles and Option concerning Boles' representation of Option with respect to the *Wilson* bankruptcy case.  There appears to be, however, no written agreement between them memorializing such relationship.  *See* Written Discovery Response re Subpoena Request No. 1.

[4]    Boles elected not to format the Privilege Log per the Instructions in the Subpoena. Boles did not disclose the job title of each recipient involved in the communication.  As well, Boles did not provide the "basis on which privilege is claimed."  At most, Boles simply disclosed the "subject matter" of the document and made the conclusory assertion, "Attorney/Client Communication."

6

"attorney-client privilege."[5]  The United States Trustee challenges Boles' assertion that the

documents are protected by the attorney-client privilege.

"'What is vital to the [attorney-client] privilege is that the communication be made *in*

*confidence* for the purpose of obtaining *legal* advice *from the lawyer*.'"  *U.S. v. El Paso Co.*, 682

F.2d 530, 538 (5th Cir. 1981)(emphasis in original)(quoting *U.S. v. Kovel*, 296 F.2d 918, 922 (2d

Cir. 1961)(emphasis in original).

Not all communications between attorney and client are protected by the privilege.  Only

those that fall with the established parameters of the privilege qualify for protection.  *In re*

*Fibermark, Inc.*, 330 B.R. 480, 497 (Bankr.D.Vt. 2005)(citing *In re Baldwin-United Corp.*, 38

B.R. 802, 805 (Bankr.S.D.Ohio 1984)).  Courts apply the attorney-client privilege only when

necessary because it withholds relevant information from the judicial process.  *In re Tri-State*

*Outdoor Media Group, Inc.*, 283 B.R. 358, 369 (Bankr.M.D.Ga. 2002); and *In re Fibermark,*

*Inc.*, 330 B.R. 480, 498 (Bankr.D.Vt. 2005).  The attorney-client privilege is to be narrowly

construed.  *In re Baldwin-United*, 38 B.R. at 804; and *In re Fibermark, Inc.*, 330 B.R. 480, 498

(Bankr.D.Vt. 2005).  The party asserting the privilege has the burden of affirmatively raising the

privilege and has the burden of proof.  *In re Fibermark, Inc.*, 330 B.R. 480, 498 (Bankr.D.Vt.

2005).

---

[5]      With respect to 12 of those 166 documents, Boles redacted information allegedly
containing "Irrelevant Confidential and/or Proprietary Business Information."  Such is not a type
of "privilege" recognized in federal law.  Additionally, when information is withheld,
Fed.R.Civ.P. 45(d)(2) requires a description of the withheld communication sufficient to "enable
the parties to assess the claim."  At best, Boles has only identified the "subject matter," using
generic, non-specific phrases.

**A.      The Privilege Log documents are not protected by the attorney-client privilege because the communications were not made by the client, Option.**

The burden to establish the elements of the attorney-client privilege lies with the party claiming the privilege.  *In re Hardwood P-G, Inc.*, 403 B.R. 455, 457 (Bankr.W.D.Tex.2009) (citing *Ferko v. NASCAR, Inc.*, 218 F.R.D. 125, 134 (E.D.Tex. 2003)).  The elements of the attorney-client privilege are:

> (1) Where legal advice of any kind is sought; (2) from a professional legal advisor in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal advisor; (8) except the protection may be waived.

*U.S. v. El Paso Co.*, 682 F.2d 530, 538 n. 9 (5th Cir. 1982)(quoting 8 J.Wigmore Evidence § 2292 at 554 (J.McNaughton rev. 1961).  The privilege also extends to the attorney's response to the client.  *See* 8 J.Wignmore Evidence § 2320 at 628 (J.McNaughton rev.1961).

Boles' assertion of the attorney-client privilege is undermined by the absence of element numbers 2 and 5, i.e., attorney-client communication.  The Privilege Log records that only 31 out of the 165 documents involved a communication either 1) authored by Boles and delivered to Option or 2) authored by Option and delivered to Boles.  Only those 31 documents, therefore, could be subject to analysis under a claim of privilege.[6]  This Court should rule, therefore, that the remaining 134 documents could not be subject to a claim of attorney-client privilege.

---

[6]       As discussed *infra*, the United States Trustee asserts that the attorney-client privilege does not apply to any of the 165 documents, even these 31.  Among other reasons, all 31 were disclosed to a third-party, Fidelity.  Additionally, Option's authorship of those 2 documents, Bates-stamped 00101 and 00103, is unclear.  Although an individual's name is identified, and the Privilege Log indicates that she is employed by Option, the Privilege Log also includes an undefined term, "Umbrella," with respect to the individual.  The United States Trustee reserves the right to challenge whether Option and/or an Option employee actually authored documents 00101 and/or 00103.

8

**B.    The Privilege Log documents are not protected by the attorney-client privilege because Option intended that underlying information be made public.**

Courts "refuse[] to apply the privilege to information that the client intends his attorney to impart to others." *U.S. v. Pipkins*, 528 F.2d 559, 563 (5th Cir. 1976)(no privilege as to sample provided to handwriting expert employed by client)(citations omitted).  Option undoubtedly intended that its Motion(s) to Lift Stay be made public.  Both Motions were filed with a federal court, and copies can be acquired by anyone.  The attorney-client privilege does not protect the underlying facts that Option conveyed to Boles.  "The privilege only protects disclosure of communications; it does not protect disclosure of underlying facts by those who communicated with the attorney." *Upjohn Co. v. U.S.*, 449 U.S. 383, 385 (1981).

With respect to a subpoenaed tax return that is filed with a taxing authority, an attorney for the taxpayer could not withhold such on the basis of the attorney-client privilege.  "Federal and state tax returns and other reports filed with the government . . . are not confidential communications and hence are not privileged." *U.S. v. Davis*, 636 F.2d 1028, 1044 (5th Cir. 1981).

 By extension, documents which a client intends to be filed with a federal court are not deemed to be confidential communications.  "[I]nformation and communications imparted from a client to his attorney *for the purpose of their disclosure* in a bankruptcy filing are not privileged because information intended to be disclosed in such a filing by definition is not information provided to the attorney in confidence.  *U.S. v. Naegele*, 468 F.Supp.2d 165, 170 (D.D.C 2007)(re bankruptcy petition and schedules)(quoting *U.S. v. White*, 950 F.2d 426, 430 (7th Cir. 1991).  When there is no intent that the communication remain confidential, the privilege does

9

not attach.  *Id*.  "If a client communicates information to his attorney with the understanding that the information will be revealed to others, that information '*as well as the details underlying the data which was to be published*' will not enjoy the privilege."  *Naegele*, 468 F.Supp.2d at 170 (emphasis in the original)(quoting *U.S. v. (Under Seal)*, 748 F.2d 871, 875 (4th Cir. 1984).  "That principle certainly applies to bankruptcy filings as well."  *Naegele*, *id*. at 170.[7]

If the documents denoted on the Privilege Log pertain to (either or both of) Option's Motion(s) to Lift Stay, then Option intended for the information/data contained therein to be made public.  The Court should require Boles to produce all documents that contain information and underlying data relevant to the Motion(s) to Lift Stay.

C.      **The Privilege Log documents not pertaining to confidential communications and legal advice in response thereto are not protected by the attorney-client privilege.**

The Privilege Log denotes numerous documents that do not appear to involve client confidences or legal advice in response thereto.  Boles appears, rather, to have claimed the privilege merely because the document was prepared by Boles or in furtherance of its representation of Option.  The first document referenced in the Privilege Log, denoted on Line 2, is an example of this.  Under Column F, "Subject Matter," Boles describes this document as being a "Document List."  Boles undertook no effort to describe how a list of documents (presumably documents that could support a motion for relief from stay) are in and of themselves protected by the attorney-client privilege.

---

[7]      But see *Apex Mut. Fund v. N-Group Securities*, 841 F.Supp. 1423 (S.D.Tex. 1993)(adopting more limited waiver rule than *(Under Seal)*: "Only those parts of attorney-client documents that ultimately appear in published documents are outside the privilege"); and *Muncy v. City of Dallas*, 2001 WL 1795591 (N.D.Tex.)(accord).

10

Line 5 is another example of a communication that does not appear to be a client confidence or legal advice.  The subject matter is described as a "Document Request - Payment History."  Again, Boles made no effort to specify why such document would be privileged.

The test of whether a document is privileged is not whether it was prepared by a lawyer or prepared at the request of a lawyer.  Rather, "the usual common-law prerequisites for the privilege must be satisfied: the information in the documents must be confidential and the transfer must have been made to obtain legal advice."  *U.S. v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981).  So, in *Davis*, tax returns and tax records upon which they were based were not deemed to be privileged.  That was so because preparation of tax returns is primarily an accounting service.  "It would make little sense to permit a taxpayer to invoke a privilege merely because he hires an attorney to perform the same task."  *Id*.  "[T]he attorney client privilege does not attach simply by reason of the relationship but depends on the specific contents of the communication."  *In re Fibermark, Inc.*, 330 B.R. 480, 499 (Bankr.D.Vt. 2005)(citation omitted).  Thus, in *U.S. v. Naegele*, 468 F.Supp.2d 165 (D.D.C. 2007), the court rejected a privilege claim as to "a number of fax cover sheets and letters/faxes/notes/emails between [the attorney] and [the client] which, upon examination, do not contain any confidential client communications or legal advice."  The Court, thus, should not permit the assertion of the attorney-client privilege with respect to any document not involving a confidential communication for the purpose of obtaining or rendering legal advice.

**D.    If any attorney-client privilege existed with respect to the Privilege Log documents, the privilege has been waived.**[8]

**1.    Boles waived its right to assert the attorney-client privilege as to the Privilege Log because a blanket claim of privilege has been made.**

In General Objection No. 2, Boles objects to each Request for Production on the basis of the attorney-client privilege and work-product doctrine. Boles qualifies that objection with the phrase "to the extent" that a given Subpoena Request allegedly seeks documents covered by those privileges. Boles' objection, however, is in reality a blanket objection. This is demonstrated by the fact that Boles asserts **all** of the General Objections with respect to **every** single Request. Boles fails to specify which particular Request or which particular document sought implicates the attorney-client privilege and/or work-product quasi-privilege.

The over-breadth of Boles' blanket assertion of the attorney-client privilege is demonstrated with respect to the document identified in Line 154 of the Privilege Log. The document's author is named, but the Log states "employer unknown." Presumably, Boles knows that the author is not employed by Boles, Option, or Fidelity because Boles so denotes the employer in every other instance. Boles thus presumably does not know whether the author (and a recipient, whose employer is unknown) is an attorney. Option's "failure to prove which documents were prepared by attorneys considerably undermines its claim to the attorney-client privilege." *U.S. v. El Paso Corp.*, 682 F.2d at 541.

---

[8]    The United States Trustee asserts herein the absence of an attorney-client privilege or its waiver, if such ever existed. As such an *in camera* inspection of the documents would be unnecessary. Should the Court, though, deem it prudent to review the documents, the United States Trustee requests that the Court should require Boles to produce the documents for *in camera* inspection.

The Fifth Circuit cautioned as to the inadvisability and consequences of asserting

privileges on a blanket basis.  In *Davis*, a seminal opinion with respect to blanket assertions of

privilege, the Fifth Circuit cautioned: "Future litigants who make only blanket assertions of

privilege at enforcement proceedings should not expect . . . grace."  *Davis*, 636 F.2d at 1044 n.

20.  Faithful to its cautioning in *Davis*, the Fifth Circuit rejected a blanket assertion of privilege

in a subsequent case.  In *U.S. v. El Paso Co.*, 682 F.2d 530 (5th Cir. 1982), the court assessed the

district court's refusal to enter a protective order with respect to a "tax pool analysis" and other

documents claimed to be privileged.  Among a number of reasons for rejecting the defendant's

claim of attorney-client privilege was the blanket assertion of the privilege:

> In *United States v. Davis*, we reiterated the unacceptability of blanket
> assertions of the attorney-client privilege. []  Such assertions disable the court and
> the adversary party from testing the merits of the claim of privilege. . . . [The
> defendant] had fair notice of the obligation to make its privilege claim precise.
> We cannot excuse its failure to do so.

682 F.2d at 541.


### 2.      Option waived any attorney-client privilege because Option did not assert any such privilege when Option should have.

*Nguyen v. Excel Corp.*, 197 F.3d 200 (5th Cir. 1999), addressed factual circumstances

quite similar to those in the instant matter concerning prior testimony touching on attorney-client

communications.  The *Nguyen* plaintiffs sought to depose defense counsel concerning a good

faith defense.  Demonstrating good faith would limit the *Nguyen* defendant's liability, if proven,

concerning non-payment of wages to the plaintiffs for time spent donning and doffing safety

clothing.  *Id*. at 202.  The plaintiffs' request to depose counsel followed the taking of depositions

13

of witnesses employed by the defendant.  Those witnesses testified as to their belief that the

defendant had acted in good faith.  Some questions posed to the witnesses pertained to the advice

sought and obtained from the defendant's attorneys with respect to the beliefs that the witnesses

held.  Defense counsel elected not to assert the attorney-client privilege with respect to certain

questions thereby permitting the witnesses to testify about advice from counsel.  The Fifth

Circuit found the privilege had been waived:

> The district court observed that Excel did not object to all questions designed to
> elicit information about confidential communications, and that Excel did not halt
> its executives' responses to all such questions.  These questions were designed to
> elicit information beyond the general nature of the legal services provided; they
> were designed to elicit information about the substance of the communication,
> touching on the directions given to counsel and the legal materials reviewed in
> addressing the question presented.  Excel waived the attorney-client privilege by
> its failure to assert the privilege.

*Nguyen*, 197 F.3d at 206-07.

The analysis in *Nguyen* is instructive in the instant case due to material similarities in the

fact pattern.  As discussed below, Option permitted its witness, Arthur Simmons, to testify

without objection to questions about legal advice sought from and given by Option's attorney,

Boles.  Option permitted Mr. Simmons to disclose the legal advice that Option's attorney gave.

Additionally, in discovery, Option produced correspondence from Option to Boles that

concerned Option's acting upon the advice from the attorney; and Boles produced

correspondence from Boles to Option rendering legal advice.  Finally, it appears that Option has

defended itself by asserting a reliance-upon-counsel defense.  In each instance, Option effectively

waived the attorney-client privilege.  The cumulative effect establishes the waiver, as well.

14

**i.      The communications are not privileged because Option did not
object at the August 21, 2008 hearing to questions concerning
the substance of legal advice requested by and given to Option.**

In order for the attorney-client privilege to be effective, it must have been asserted and

not waived. *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 541 (10th Cir. 1984), *cert.

dismissed*, 105 S.Ct. 983 (1985); *Marx v. Kelly Hart & Hallman, P.C.*, 929 F.2d 8, 12 (1st Cir.

1991); and In *re Fibermark, Inc.*, 330 B.R. 480, 497 (Bankr.D.Vt. 2005).

If Option believed the communications between Option and its attorneys were privileged,

Option was bound to assert the privilege when questions, posed at the August 21, 2008 hearing,

necessarily called for answers that would disclose the substance of those communications.  At no

point during the hearing, though, was the privilege asserted.  The Court, in fact, noted that

Option's attorney could assert the privilege if appropriate.  Aug. 21 Tr. 209:6-7.  By failing to

assert the attorney-client privilege when privileged information was sought, Option waived it.

*Nguyen v. Excel Corp.*, 197 F.3d at 206.  Having failed to assert the privilege during the hearing,

Option waived the privilege with respect to all communications regarding the same subject

matter.

**ii.     The documents are not privileged because Option allowed
selective disclosure of its communications with counsel at the
August 21, 2008 hearing; and Boles selectively produced
correspondence pertaining to Boles' advice to Option.**

Option waived the attorney-client privilege by selectively disclosing the subject of its

communications with counsel and the advice that counsel gave.  "[A] client implicitly waives the

attorney client privilege by testifying about portions of the attorney-client communication."

*Nguyen v. Excel Corp.*, 197 F.3d at 207.  At the August 21, 2008 hearing on the Court's Orders

to show cause, Option called as its witness Arthur Simmons.  Mr. Simmons was Option's

employee who had been assigned responsibility for overseeing the Wilsons' account during their

bankruptcy case.  Mr. Simmons testified about advice he sought concerning payments received

by Option:[9]

- •   Mr. Simmons testified re Option's inquiry with Boles about what should be done with the payments that Option had received from the debtors and Boles' advice re whether to post or not post the payments that had come in.  Aug. 21 Tr. 136:9-13.

- •   Mr. Simmons testified that Option's attorney made the decision as to whether to deposit the payments that Option had received from the debtors.  Aug. 21 Tr. 255:20.

- •   Mr. Simmons testified that, although Option ultimately made the decision whether to post the payments made by the debtors, Option based that decision upon the advice of its attorney, as such were "the instructions of our attorney."  Aug. 21 Tr. 257: 5-10.

In responding to the post-hearing discovery issued by the United States Trustee, Boles

produced multiple documents constituting communications between Option and Boles

concerning legal advice.  Boles produced a letter from it to Option, indicating explicit advice that

Option should follow.  Boles also produced five letters whereby Option indicated it was acting in

conformance with the advice that Boles had rendered.  *See* Documents 00192-00197.

"Disclosure of any significant portion of a confidential communication waives the

privilege as to the whole."  *Nguyen v. Excel Corp.*, 197 F.3d at 208 (quoting *Indus.*

*Clearinghouse Inc. v. Browning Mfg. Div. of Emerson Elec. Co.*, 953 Fl2d 1004, 1007 (5th Cir.

1992).  The *Nguyen* court found that the defendant "selectively disclosed portions of the

---

[9]      "A client's specific request to an attorney and pertinent information related thereto fall within the reaches of the [attorney-client] privilege."  *Nguyen*, 197 F.3d at 206.

16

privileged communication, thereby implicitly waiving the privilege." *Id*. at 206 (disclosure by deposition testimony).

In summary, Option waived any privilege by: 1) permitting Mr. Simmons to testify as to queries made to counsel for legal advice and the substance of the advice given; and 2) selectively disclosing communications between client and counsel with respect to legal advice.

> **3.      By operation of Fed.R.Evid. 502, Option waived the privilege as to the documents indicated in the Privilege Log**

Fed.R.Evid. 502(a) (effective September 19, 2008[10]) parallels (but does not supplant[11]) the common law propositions in *Nguyen*.  Rule 502(a) addresses the effect of disclosure of one protected communication as such impacts whether waiver has occurred as to all protected communications.  Rule 502(a) addresses circumstances involving "disclosure of a communication or information covered by the attorney-client privilege or work-product doctrine" in a federal proceeding or to a federal official or agency.  In that context, the disclosure extends the waiver to undisclosed communications or information if: 1) the waiver was intentional; 2) the disclosed and undisclosed communication or information concern the same subject matter; and 3) they ought in fairness to be considered together.

---

[10]      Pub.L. 110-332, § 1(c), 122 Stat. 3538, provided that: "The amendments made by this Act [enacting Rule 502] shall apply in all proceedings commenced after the date of enactment of this Act [Sept. 19, 2008] and, insofar as is just and practicable, in all proceedings pending on such date of enactment."

[11]      The Advisory Committee Notes clarify that "the rule does not purport to supplant applicable waiver doctrine generally. . . . Other common law waiver doctrines may result in a finding of waiver even where there is no disclosure of privileged information or work product. *See, e.g., Nguyen v. Excel Corp.*, 197 F.3d 200 (5th Cir. 1999)."

The disclosure of the substance of the communications between Option and Boles at the August 21, 2008 hearing must have been intentional. Option, through its counsel, Boles, called Mr. Simmons as a witness even though Option's assistant secretary, Dory Goebel,[12] had already testified the same day. Revelation about Mr. Simmons' query to Option's counsel occurred during Mr. Simmons' direct examination.[13] Given the substance of Mr. Simmons' testimony, and given the dates and subject matters of the documents listed in the Privilege Log, it seems likely that many (if not all) of the Privilege Log documents involve the same subject matter.

The elements of intentional disclosure, contemplated by Fed.R.Evid. 502(a), have been met. The Court thus should require production of all documents regarding the same subject matter.

> **4.      Option's advice-of-counsel defense waived the attorney-client privilege as to all related communications.**

In the Written Discovery Response, Boles has asserted the advice-of-counsel defense to explain the filing of the inaccurate Motion to Lift Stay. In General Objection 14, Boles states: "The production of documents otherwise privileged but for Option One's reliance upon the advice of counsel is not a general or other subject matter waiver of Option One's attorney-client privilege, which is expressly preserved in all respects."[14] This defense corresponds with the

---

[12]      An officer and employee of Fidelity.

[13]      Mr. Simmons' testimony at that juncture was in response to questioning by the Court. Aug. 21 Tr. 136:2 - 137:17.

[14]      Boles' assertion, on Option's behalf, of an advice-of-counsel defense is confounding. As Option's (new) counsel noted on March 26, 2009, "the privilege belongs to Option One, not to the Boles Law firm. . . . when you're relying upon [an attorney's] advice and the scope of that, we'll deal with that appropriately." March 26, 2009 Transcript 78:12-20. Upon information and belief, though, Option's counsel was aware of Boles' legal positions taken

testimony of Arthur Simmons at the August 21, 2008 hearing: Option relied upon the advice/instructions of its attorney concerning handling of payments that were being received. Aug. 21 Tr. 255:20; and 257:5-10.

In the Fifth Circuit, assertion of an advice-of-counsel defense waives the attorney privilege as "to all communications, whether written or oral, to or from counsel concerning the transactions for which counsel's advice was sought."  *See, e.g., Ward v. Succession of Freeman*, 854 F.2d 780, 787-88 (5th Cir. 1988) (dictum) (citing "long-recognized" general rule "in our courts"); and Fed.R.Evid. 502, Advisory Committee Notes, citing *Nguyen v. Excel Corp.*, 197 F.3d 200 (5th Cir. 1999), for the proposition "reliance on an advice of counsel defense waives the privilege with respect to attorney-client communications pertinent to that defense."

Having asserted the advice-of-counsel defense on behalf of Option, Boles is not permitted to withhold otherwise privileged documents that relate to the subject matter of Option's queries and counsel's advice.  Boles cannot unilaterally declare that such defense does not otherwise waive the privilege.  *See* General Objection 14.

### 5.     Option waived any attorney-client privilege because Option disclosed assertedly confidential documents to a third-party, Fidelity.

The Privilege Log reveals that Fidelity, a non-client third-party, participated in every communication noted on the Privilege Log.  Disclosure of confidential documents directly to a third party destroys confidentiality and attorney-client privilege protection for those documents. *U.S. v. El Paso Co.*, 682 F.2d 530, 540 (5th Cir. 1982).  An exception to this rule exists for third parties who assist an attorney in rendering legal advice.  *Ferko v. National Ass'n for Stock Car*

―――――――――――――――――

in the Written Discovery Response before it was served on the United States Trustee.

19

*Racing*, 218 F.R.D. 125 (E.D.Tex. 2003) (citing *U.S. v. Kovel*, 296 F.2d 918, 922 (2d Cir.1961).

The third-party's service must be "necessary, or at least highly useful, for the effective

consultation between the client and the lawyer. . ."  *In re Fibermark*, 330 B.R. 480, 499

(Bankr.D.Vt.2005) (financial consultant) (relying on *Kovel*, 296 F.2d at 922)).

The Written Discovery Response never alleges that Fidelity acted as Boles' agent in

representing Option.  Boles has not cited any document wherein Fidelity agreed to act as Boles'

agent in representing Option, nor has Boles described specifically the services Fidelity provided

in this case.  In short, Boles has not demonstrated that Fidelity's services were "necessary, or at

least highly useful" to Boles' representation of Option.

Boles has leveraged the very concept of "agency" to defend non-production of the 165

documents, even though Boles has not alleged that Fidelity acted as its agent.  Boles claims that

the attorney-client privilege extends to any communication between Boles and Fidelity "made in

furtherance of providing legal services. . ."  Written Discovery Response re Subpoena Request

No. 6.

The burden is on the party asserting the attorney-client privilege to prove that waiver did

not occur.  *In re Hardwood P-G, Inc.*, 403 B.R. 445, 457 (Bankr.W.D.Tex. 2009).  To meet its

burden, Boles should have demonstrated the necessity or great utility of Fidelity's involvement.

Stated differently, Boles should have demonstrated how the information or services that Fidelity

provided to Boles could not have been obtained directly from Option.

A linguist who translates a legal document into a language readable by a client's attorney

would be an example of a third-party rendering services necessary to an attorney's effective

representation of a client.  *U.S. v. Kovel*, 296 F.2d 918, 921-22 (2d Cir. 1961) (hypothetical

20

involving a linguist).  Likewise, an accountant who translates complex tax terms into a form intelligible to a lawyer at the lawyer's behest is another example.  *U.S. v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982) (citing *Kovel*, 296 F.2d at 922).  In this case, however, Boles has not shown that Fidelity provided "necessary, or at least highly useful" services with respect to Boles' representation of Option.

## IV. Boles' General Objections are improper.

Boles prefaces its substantive responses with seventeen objections labeled as "General Objections."  Written Discovery Response, pp. 1-5.  Despite clear instruction from the Fifth Circuit that blanket objections are impotent and can result in waiver of privileges, the General Objections interposed by Boles are just that.  Notably Boles asserts every General Objection with respect to every Subpoena Request.  For this reason alone, the Court should overrule and disallow the assertion of the General Objections.

Besides being improper as a group, specific objections within the General Objections are inappropriate as noted below.

General Objection 1: Boles refers to but does not specify "other applicable law or rules and/or the orders in this matter" that one or more of the Subpoena Requests contravene.

General Objection 2(a): Boles' assertion of the attorney-client privilege is improper, as discussed *supra*.

General Objection 2(b): Boles' assertion of the work-product doctrine is improper, in that it has been made in a blanket fashion.  Boles specifically references this protection only once, in General Objection 2.  In boiler-plate fashion, Boles references all of the General Objections, including General Objection 2, in response to every single Subpoena Request.  Boles never

21

explains the applicability of the work-product protection with respect to a specific Request or document.  Boles has improperly invoked the work-product privilege.  In light of Boles's decision to make a blanket assertion of the privilege, it is virtually impossible for the United States Trustee to ascertain the documents to which such privilege might legitimately be asserted.  The Court, therefore, should overrule and disallow the assertion of the work-product privilege.

"The work product privilege is very different from the attorney-client privilege."  *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989).  For example, the work-product doctrine requires inquiry whether a particular document has been created in anticipation of litigation.  For the Court to rule on the applicability of the privilege, it must determine the purpose for the creation of the documents referenced on the Privilege Log; and determine whether the first and/or second Motion to Lift Stay proceedings was "litigation"; and, if so, if the show-cause proceeding is distinctly different "litigation" as to which proper assertion of the work-product privilege could conceivably be relevant.

Given Boles' blanket assertion of the work-product privilege, the Court should overrule and disallow it.  Blanket assertions of the work-product protection are insufficient to invoke the privilege.  *Ferko v. NASCAR, Inc.*, 219 F.R.D. 396, 402 (E.D.Tex. 2003).  Should the Court permit Boles to assert further work-product privileges as to specific documents, the United States Trustee reserves the right to assert a specific response to such assertion.

General Objection 2(c): Boles asserts that unspecified documents may contain information that is "confidential, proprietary and/or trade secret."  That is not a type of privilege recognized in federal law.  The Bankruptcy Code and Rules, rather, provide means that Boles could use to request a protective order per 11 U.S.C. § 107 and/or Fed.R.Bankr.P. 9018.  Unless

and until Boles obtains such protective order, Boles should not be permitted to decline production.

General Objection 3:  Non-production is not an appropriate response if Boles contends that the relevant document can be obtained elsewhere.  Boles should be required to specify which documents are available elsewhere to allow the United States Trustee the ability assess the correctness of Boles' contention.

General Objections 4, 5, and 8: Boles should not be permitted to decline production of a specific document as "not relevant"; not "reasonably calculated to lead to the discovery of admissible evidence"; "vague, ambiguous, irrelevant, or incomprehensible"; "confusing"; "cumulative"; "duplicative"; and/or "subsumed within other requests," without specifically describing how a particular Request is objectionable in that fashion.

General Objection 6 and 7: Boles claims that unspecified Requests are: i) not limited to "defined time periods or limits," ii) "without limitation as to time; or iii) "for a period of time that is unrelated to the disputes at issue in this case."  Boles' contention misses the mark.  Nine of the Requests (Nos. 6, 7, 8, 9, 10, 11, 13, 17, and 18) specifically reference a date or range of dates.  The remaining nine Requests reference either the "Wilson Case," a paper filed in the Wilson Case, or the "Wilson Account," all of which contain specific time references in the Definitions included with the Subpoena.  Boles has not specified any Request that is "for a time period that is unrelated to the disputes at issue in this case."

General Objection 11: Boles re-asserts an objection, like that made in General Objection 2(c), that unspecified Requests require production of "confidential and/or proprietary business information."  The United States Trustee reasserts its reply to General Objection 2(c).

23

General Objection 12: Boles fails to specify which Subpoena Definition "purports to ascribe a term of meaning other than the common, generally accepted definition of such term."

General Objection 13: This objection seems to be the fulcrum for any decision by Boles not to produce.  In essence, Boles claims that, if a General Objection is raised as to a document, not only will Boles decline to produce it, but Boles will also decline to disclose whether such responsive document exists.  For example, Boles' response to Request No. 2, calling for production of any agreement between Boles and Fidelity "affecting the rights of Option, that concerns the Wilson Case," is improper.  Fidelity has already indicated there is a written agreement between Boles and Fidelity, and Boles presumably took action on behalf of Option in the Wilson bankruptcy case in accordance with the terms of that agreement.  Rather than acknowledging that such an agreement exists yet reserving the right to challenge its relevance, Boles answers Request No. 2 that "There are no agreements or amendments thereto executed between Boles and Fidelity [ ], that affect the rights of Option and that concern the Wilson case." Written Discovery Response re Request No. 2.

Boles' lack of specificity in its General Objection 13 precludes any meaningful review by the United States Trustee.  The Court accordingly should overrule and disallow General Objection 13.[15]

---

[15]     General Objection 13 also directly contradicts General Objection 3(a), thus, creating utter confusion as to Boles' methodology in producing documents.  The contradiction concerns whether Boles would or would not produce documents not in its custody, control, or possession.

24

General Objection 14: The United States Trustee has previously addressed the impropriety of the claim of privilege (and resultant non-production of documents) in view of the advice-of-counsel defense.

General Objection 17: Boles asserts that unspecified General Objections apply "even if not specifically referred to in a particular response."  Again, this legal position contravenes the law in the Fifth Circuit proscribing blanket, non-specific objections.

## V.  Boles should be required to comply promptly with the Subpoena.

Boles sought but was denied a stay of discovery by this Court.  *See* March 27, 2009 Order Denying Motion for Clarification, Motion to Reconsider, and Motion to Stay, Dkt. No. 143. Boles did not appeal.  With respect to similar discovery requests made to Fidelity and Option, the District Court denied stays: "The [District] Court finds that the public interest would be more effectively served by allowing the bankruptcy proceedings to continue unhindered by a stay." June 3, 2009 Orders and Reasons, p. 9, *In re Wilson*, District Court Case No. 09-3281.

Despite this Court's unequivocal rulings, and the District Court's admonition (*id*. at 7 n. 6) that "Counsel are advised to become better aware of 28 U.S.C. § 1927,"[16] Boles has dragged out the discovery process by failing to comply fully with the Subpoena.  This Court should end Boles' delaying tactics and order immediate production of documents required by the Subpoena.

WHEREFORE, the United States Trustee requests that the Court:

1.  Grant this Motion and compel Boles to produce documents requested in the Subpoena but which Boles has not produced to date.

2.  Overrule and disallow the General Objections.

---

[16]     Not directed at Boles or its counsel.

25

3.  Grant the United States Trustee a hearing with respect to this Motion.

4.  Grant the United States Trustee such additional general relief to which the United

States Trustee may be entitled.

Respectfully submitted,

R. MICHAEL BOLEN
United States Trustee
Region 5, Judicial Districts of
Louisiana and Mississippi

by: *s/ Mary Langston*
MARY LANGSTON (22818)
Assistant U.S. Trustee
400 Poydras Street, Suite 2110
New Orleans, LA 70130
Telephone no. (504) 589-4018
Direct telephone no. (504) 589-4093
Facsimile no. (504) 589-4096


SEAN M. HAYNES (TN # 14881)
LR 11.2 Trial Attorney
Admitted *pro hac vice*
Office of United States Trustee
200 Jefferson Avenue, Suite 400
Memphis, TN 38103
Telephone no. (901) 544-3251
Direct telephone no. (901) 544-3486
Facsimile no. (901) 544-4138

26